E. M. ASBURY ET AL. v. TOWN OF ALBEMARLE.

(Filed 13 May, 1913.)

1. Cities and Towns—Waterworks—Legislative Restrictions—Derogation of Rights—Interpretation of Statutes.

A statute which is mandatory, and is in derogation of the usual and common rights of a municipality to construct or purchase, as well as to manage, its public utilities in the exercise of a sound discretion by the municipal authority, must be construed liberally in favor of the public and strictly against those specifically favored.

2. Same—Words and Phrases.

When words are used in the expressions of a statute which have a well known legal meaning, and nothing appears therein which would show that a different meaning was intended by the use of these words, there is no ambiguity of expression for the courts to construe, the presumption being that the lawmaking power had expressed its intent according to the legal significance of the words it had employed.

3. Same—"Corporations."

Chapter 86, Public Laws of 1911, provides that a municipal corporation, before undertaking to build "any public system of waterworks, shall . . . first acquire, either by condemnation or purchase, the property of such system already laid, operated, and maintained" by a "private or *quasi*-public corporation," within the municipality, etc.: *Held*, the word "corporation" has a definite legal meaning, and will not be construed to embrace an unincorporated company of individuals, or a partnership, operating and maintaining a waterworks plant within the limits of the municipality. *Efland's case*, 146 N. C., 135, cited and distinguished.

4. Cities and Towns—Waterworks—Acquisition of Plant—Discretion—Private Plants—Constitutional Law—Legislative Restrictions.

A water plant is a necessity which a municipal corporation may, in its discretion, acquire for the benefit of its own citizens, and the exercise of this discretion is local in its nature, not governmental in character, and is subject to the constitutional legislative restraints upon private corporations; hence an act of the Legislature which provides that before constructing its water plant the municipality shall acquire by purchase or condemnation a system maintained in its corporate limits by a private corporation, etc., is an unconstitutional interference by the Legis-

lature in attempting to control the municipality in the exercise
of its discretion in the management of its local affairs, and is an
undue limitation upon the right of local self-government.

HOKE and ALLEN, JJ., dissenting.

APPEAL by defendants from *Cooke, J.,* at September Term,
1912, of STANLY:

Civil action, brought to restrain defendants from proceeding
with the construction of municipal waterworks in the town of
Albemarle. Motion to nonsuit was overruled. Certain issues
were submitted to a jury, and under the instructions of the
court found for plaintiff. The court rendered judgment that
the defendant commissioners "be, and each of them, peremp-
torily commanded and directed to proceed forthwith to acquire
the waterworks system or plant of the plaintiffs described in
the complaint in the manner provided by chapter 86, Public
Laws of 1911," etc.

The defendants appealed.

*J. R. Price, R. L. Brown, and Burwell & Cansler for plain-
tiff.*

*R. L. Smith, and Manly, Hendren & Womble for defendants.*

BROWN, J. Chapter 86, Public Laws 1911, among other
things, provides that "whenever any incorporated town or city,
which under this or by special act has been or may be author-
ized, from the sale of bonds, or otherwise, to build, operate,
and maintain a public waterworks : . . there shall have
been constructed in said town or city by any private or *quasi*-
public corporation . . . waterworks . . . then in active
operation and serving the public, which construction or opera-
tion was authorized by said town or city . . . then before
constructing any proposed system of waterworks . . . hereto-
fore or hereafter authorized by law, along or upon the streets
occupied by such private or *quasi*-public corporation, the town
or city within which such utilities are located and owned, pro-
posing to build any public system of waterworks, shall, before
undertaking to do so, first acquire, either by purchase or con-
demnation, the property of such system already laid, operated,

and maintained by such private or *quasi*-public corporation. (Then follows the machinery pointed out in said act for the acquirement by condemnation of the property aforesaid.)

The defendants contend, among other defenses:

1. That upon all the evidence the plaintiff's plant is not a "system of waterworks" constructed by a private or *quasi*-public corporation" in "active operation and serving the public," and therefore the plaintiffs do not come within the act.

2. That the act is unconstitutional.

We are of opinion that the allegations of the complaint as well as the evidence in support thereof fail entirely to bring the plaintiffs within the terms of the act of 1911, commonly known as the Battle Act.

The evidence shows that the waterworks plant which the plaintiffs are endeavoring to compel the town to take over was not constructed or owned by a private or *quasi*-public corporation, but was constructed and is owned by a partnership, and that at the time of the plaintiff's demand under the act this private plant was not "in active operation, serving the public," within the sense and meaning of the law.

This statute is mandatory and not directory in its terms. No discretion is left to the municipal authorities. Again, the statute is in derogation of the usual and common rights of all municipalities to construct or purchase as well as to manage their public utilities in the exercise of a sound discretion by the municipal authorities to manage them for the public good.

Statutes in derogation of common rights or conferring special privileges are to be construed liberally in favor of the public and strictly against those specially favored. Also, where the requirements of a statute are mandatory in terms, it must be strictly construed. 36 Cyc., 1173.

Another rule applicable to the construction of statutes is that when they make use of words of definite and well known sense in the law, they are to be received and expounded in the same sense in the statute. *Adams v. Turrentine*, 30 N. C., 149. In that case *Chief Justice Ruffin* says: "Indeed, this rule is not confined to the construction of statutes, but extends to the interpretation of private instruments. There are exceptions to

it, where it is seen that a word is used in a sense different from its proper one in instruments made by a person *inops consilii.* But that is a condition in which the Legislature cannot be supposed, and, therefore, although the intention of the Legislature, as collected from the whole act, is to prevail, a technical term, having a settled legal sense, cannot be received in any other sense, unless at the last it be perfectly plain on the act itself what that other sense is. This principle, which is as well one of common sense as of common law, seems to be decisive of the present question."

It is well settled that the province of construction lies wholly within the domain of ambiguity, and that if the language used is clear and admits but one meaning, the Legislature should be taken to mean what it has plainly expressed. *Hamilton v. Rathbone,* 175 U. S., 421; 26 A. and E. Enc., 598.

As *Mr. Justice Story* says in *Gardner v. Collins,* 2 Pet. (U. S.), 93, "What the legislative intention was can be derived only from the words they have used, and we cannot speculate beyond the reasonable import of those words; the spirit of the act must be extracted from the words of the act and not from conjectures *aliunde."*

Where the words used are plain and have a well known meaning, "any departure by the courts from the language used would be unjustifiable assumption of legislative power." *Foley v. People,* 1 Ill., 57; 26 A. and E. Enc., 598.

The words "private corporation" and *"quasi*-public corporation" are technical terms of well known significance in the law, and so much so that it is unnecessary to define them.

In the use of such terms we have no right to say that the Legislature intended also to embrace a single individual or a partnership. The latter is a contract between private individuals for the purpose of trade or gain. Their relation to the public is very different from that of a corporation.

The *Efland case,* 146 N. C., 135, is not a precedent. In that case we held that the word "companies" as used in the statute was plainly intended to embrace "all corporations, companies, or persons" engaged as common carriers in transportation of freight.

The word "company" has no such technical and legal meaning as the word "corporation."

The authorities generally hold that "company" is a generic and comprehensive word, and may include individuals, partnerships, and corporations. 8 Cyc., 399.

But we are cited to no authority which holds that the word "corporation" may include a partnership or an unincorporated association of individuals.

It is said that this construction will work a great hardship on plaintiffs. That is not our fault. *Ita lex scripta est.* If the Legislature intended to include an individual or partnership, it should have so declared by appropriate and unambiguous language.

It is not probable that the General Assembly intended to compel municipalities to purchase such private waterworks as the entire evidence in this case shows plaintiffs' plant to be. As a sample, we copy from the evidence of plaintiffs' witness Finger, who had charge of the plaintiffs' plant since 1905:

"The average daily capacity of the plant is 15,000 gallons. We have been pumping this amount for the last two or three months. It has about the same capacity in the winter-time. Our customers use about as much again water in the summer as they do in the winter. During the dry season this summer we have furnished water from 6 o'clock in the morning to from 12 to 2 in the afternoon. When we turn it on, there is from three to five thousand gallons in the tank, which is drawn out almost immediately by the customers and put in buckets and tubs."

Plaintiffs have 185 customers in the town, and there are 240 other families unsupplied. The plant has one tank of 1,000 gallons capacity only on a 40-foot tower. It furnishes not more than a third of the business houses and no supply at all for fire purposes. Its pipes are so small as to be useless for fire protection and are worthless in the construction of a new plant.

The evidence shows that the town is now installing a large and modern plant with a 100,000-gallon tank on top of a 112-foot tower. There will be, when completed, 5 miles of dis-

tributing pipe ranging from 10 inches to 6 inches in diameter, and that the capacity will be three-fourths of a million gallons per day.

The defendants offered to prove by a civil engineer that no part of the property or system of waterworks belonging to the plaintiff could be or could have been used or utilized by the defendant as a part of its proposed system of waterworks, and that as a part of its proposed system of waterworks it would have no value to the town.

While this evidence was improperly excluded by the court, it is manifest from all the admitted evidence that the plaintiffs' plant could not be of the slightest value in constructing the new one. To purchase it would be to take the money of the taxpayers and devote it to a private use exclusively, and to give something for nothing—a result not contemplated by the statute.

The learned counsel in this and the similar case of *Shute v. Monroe* have challenged in their briefs the constitutionality of the act as being an invasion of the rights of municipal corporations under the organic law.

We next come to consider the power of the Legislature to deprive a municipal corporation of the right through its governing body to exercise its *discretion* in the purchase of a waterworks or sewerage plant.

It must be admitted that the act of 1911 attempts to do so, and places the municipality entirely in the power of a compulsory arbitration, without even a right of review or appeal to the courts. If this be a valid exercise of legislative authority, then the right to exercise its own discretion in a purely local matter is taken from the municipality and the money of the taxpayers may be donated to a private concern.

By the action of a majority of the arbitrators, the city may be compelled to purchase something which, according to the judgment of its own authorities, is of no sort of value or use to it.

Our Constitution recognizes municipal corporations, and gives the Legislature power to create them, and also confers

upon them the right to provide for their necessary expenses. We have held that waterworks, sewerage, and some other public utilities are necessary expenses.

We do not think the Legislature can dictate to a municipal corporation the manner in which it may acquire its waterworks any more than it can dictate the kind of engine to be used in pumping the water. The principle of local self-government requires that this of necessity must be left to the sound discretion of the municipal authorities.

"Municipal corporations possess a double character: the one governmental, legislative, or public; the other, in a sense, proprietary or private. . . . In its governmental or public character the corporation is made, by the State, one of its instruments, or the local depositary of certain limited and prescribed political powers, to be exercised for the public good on behalf of the State rather than for itself. . . . But in its proprietary or private character the theory is that the powers are supposed not to be conferred, primarily or chiefly, from considerations connected with the government of the State at large, but for the private advantage of the compact community which is incorporated as a distinct legal personality or corporate individual; and as to such powers, and to property acquired thereunder, and contracts made with reference thereto, the corporation is to be regarded *quoad hoc* as a private corporation, or at least not public in the sense that the power of the Legislature over it or the rights represented by it are omnipotent."

In matters purely governmental in character, it is conceded that the municipality is under the absolute control of the legislative power, but as to its private or proprietary functions, the Legislature is under the same constitutional restraints that are placed upon it in respect of private corporations.

The *Detroit Park case,* 28 Mich., 228, page 208 *et seq.,* in 15th Amer. Rep.; *Bailey v. New York,* 3 Hill, 531; *Philadelphia v. Fox,* 64 Pa. St., 180; *Small v. Danville,* 51 Me., 362; *Western College v. Cleveland,* 12 Ohio (N. C.), 375; Dillon's Municipal Corporations (4th Ed.), volume 1, pages 99 to 101, inclusive, and especially pages 107, 108, and pages 111 to 123, inclusive.

"It may be admitted that corporations . . . such as . . . cities, may in many respects be subject to· legislative control. But it will hardly be contended that even in respect to such corporations the legislative power is so transcendent that it may, at· its will, take away the private property of the corporation, or change the uses of its private funds acquired under the public faith."

*Dartmouth College case,* 4 Wheat., 518, 694, 695; Cooley's Const. Lim. (6th Ed.), pages 284, 285, and 290; *Hewison v. New Haven,* 37 Conn., 475.

The case of *People v. Hurlburt,* 24 Mich., 44, is in point. In a learned and forcible opinion, *Judge Cooley* says:

"The doctrine that within any general grant of legislative power by the Constitution there can be found authority thus to take from the people the management of their local concerns, and the choice, directly or indirectly, of their local officers, if practically asserted, would be somewhat startling to our people."

Again: "The· officers in question involve the custody and control of the . . . sewers, waterworks, and public buildings of the city, and the duties are purely local. The State at large may have an indirect interest in an intelligent, honest, upright, and prompt discharge of them, but· this is on commercial and neighborhood grounds rather than political, and *it is not much greater or more direct than if the State line excluded the city.* Conceding to the State the authority to shape the municipal corporations at its will, it would not follow that a similar power of control might be exercised by the State as regards the property which the corporation has acquired, or the rights in the nature of property which have been conferred upon it."

See, also, the opinion of *Chief Justice Breese* in *People v. Mayor of Chicago,* 51 Ill., 17; *People v. Batchellor,* 53 N. Y., 128; 1 Dillon Mun. Corp., 72.

It is well settled that local conveniences and public utilities, like water and lights, are not provided by municipal corporations in their political or governmental capacity, but in that *quasi*-private capacity, in which they act ·for the benefit of

their citizens exclusively. 1 Dillon Mun. Corp., p. 99; *San Francisco Gas Co. v. San Francisco,* 9 Cal., 453; *Detroit v. Corey,* 9 Mich., 195.

The same doctrine is held by this Court, *Fisher v. New Bern,* 140 N. C., 506. *Terrell v. Washington,* 158 N. C., 288.

A town cannot be compelled by the Legislature to undertake public improvements not governmental in character. This is well settled. 1 Abbott Mun. Corp., 134.

If the Legislature cannot compel a municipality to establish waterworks, how can it control the exercise of its discretion by the municipality when it undertakes to install them? The exercise of such a power would be destructive of the most cherished principles of local self-government. We are cited to a very strong and learned opinion directly in point, *Helena Con. Water Co. v. Steele,* 20 Mont., 1.

The Legislature of Montana passed a statute similar to the Battle Act. The Supreme Court of Montana held that the statute placed a restriction upon the municipality and made mandatory the incurring of indebtedness for the purpose of acquiring the plant if it decided to maintain and operate its own works. The Court, in addition to other objections, declared the statute to be an infringement of the right of local self-government inherently vested in all municipal corporations in a matter relating purely to its property rights and private affairs as distinguished from the rights and duties as an agency of the State.

In referring to the moral obligation to purchase an established plant, the Court said:

"It is contended that the moral obligation of the city to assume this compulsory indebtedness is sufficient to support the law and relieve it of its unconstitutionality, if it be in conflict with the Constitution. But we are unable to see what moral obligation the city is under, or has ever assumed, that will bring the matter under the rule contended for by counsel of respondent.

"The city never agreed for all time to buy water from the plaintiffs. It expressly reserved the right to do otherwise. Plaintiffs' plant may not be capable of furnishing an ample

supply of wholesome water for the inhabitants of the city, either now or as the city may expand or increase in population in the future. The plant and system may be practically worthless.

"The city may be able to secure the water system and supply for half what plaintiff's plant would cost. Is there any such moral obligation on the part of the city disclosed in this case as would justify this Court in compelling it to assume the indebtedness necessary for it to assume in order to purchase plaintiff's plant, tax the people for money to meet such indebtedness, in total disregard of all these possible and probable events?

"Shall it be said, in obedience to this law, that the city authorities, the legal representatives of the inhabitants of the city, have no discretion in the premises, but must obey, notwithstanding disaster and oppressive taxation and ruin may come upon the people as a consequence?

"We think the two provisos of the law under discussion are in violation of the clauses of the Constitution quoted and referred to above, as well as the spirit of our governmental system, which recognizes 'that the people of every hamlet, town, and city of the State are entitled to the benefits of local self-government.'

"The law is not supported by any moral obligation, but is rather a violation of the law, the Constitution, as well as the principle of moral obligation invoked by the respondent. It violates the general rule of the law that the consent of parties to a contract is necessary to its validity, whether the parties be natural or artificial persons.

"We are at loss to find any theory of law, equity, or justice upon which we can conscientiously sustain the constitutionality of the statute in question."

This case is cited by the Federal Supreme Court in an action between the same parties, coming up upon the appeal of the waterworks company from a decree of the Circuit Court of Appeals of the Ninth Circuit, where it was sought to restrain the city of Helena from acquiring a system of its own, except by purchasing an existing system. *Helena Waterworks Co. v. Helena,* 195 U. S., 383, 393.

TRUST CO. *v.* NICHOLSON.

We are of opinion that the statute under consideration is void in so far as it attempts to control the exercise of discretion by the defendant in the management of its purely private and property rights.

The motion to nonsuit is allowed and the action dismissed. Reversed.

HOKE and ALLEN, JJ., dissenting.