WOODROW EVERETTE t/a WOODROW AVERETTE TRUCK LINE v. D. O. BRIGGS LUMBER COMPANY, INC.

(Filed 23 September, 1959.)

**1. Appeal and Error § 49—**

The findings of fact by the court in a trial by the court under agreement of the parties are conclusive on appeal if supported by competent evidence.

**2. Evidence § 23.1—**

The admissibility of a telephone conversation is governed by the same rules of evidence which govern the admission of oral statements made in face to face conversations except that the party against whom a telephone conversation is sought to be used must be identified.

**3. Same— Evidence of identity of antiphonal speaker held sufficient.**

Where the witness identifies the voice in a series of telephone conversations as one and the same, and in one of the conversations the witness placed the call for the person against whom the conversation is sought to be introduced, and the person answering so identified himself, and on another occasion the witness was advised that the person called was out of his office and would call back later in the day, and that a person identifying himself as the antiphonal party did call back that day, with further testimony of the antiphonal party

that he made one of the calls to the witness, there is ample identification of the antiphonal speaker.

**4. Same—**

It is not a prerequisite to the admission of evidence of a telephone conversation that the antiphonal party be first identified, but the court in its discretion may admit the evidence subject to later identification.

**5. Trial § 13—**

The order of proof rests in the discretion of the trial court.

**6. Trial § 54—**

The proscription of G.S. 1-180 against the expression of opinion on the evidence by the trial court is solely to prevent judges from invading the province of the jury, and *a fortiori* the statute can have no application in a trial by the court under agreement of the parties.

**7. Same—**

In a trial by the court under agreement of the parties, the court not only has the privilege but the duty in apposite circumstances of asking leading questions for the purpose of clarification and to ascertain the truth.

**8. Corporations § 24—**

Under the provisions of G.S. 55-18, as rewritten by the Act of 1955, *ultra vires* is not available as a defense to a corporation in a suit against it by an outside contracting party to recover on a contract made with the corporation.

HIGGINS, J., not sitting.

APPEAL by defendant from *Bundy, J.,* May Civil Term, 1959, of BEAUFORT.

This is an action by plaintiff to recover of defendant freight charges in the amount of $840.00 for five loads of lumber transported by truck to points in New Jersey and Pennsylvania in September, 1958. Plaintiff and defendant waived trial by jury and consented that the judge might find the facts, make his conclusions of law and enter judgment.

The plaintiff, Woodrow Everette, operating as Woodrow Everette Truck Line, is engaged in the transportation of commodities by truck for hire. He operates a fleet of tractors and trailers and his office is in Washington, Beaufort County, North Carolina. The defendant, D. O. Briggs Lumber Company ( hereinafter called Briggs Company) is a South Carolina corporation with its principal office at Dillon, South Carolina. B & B Lumber Company (hereinafter referred to as B & B Company) is a North Carolina corporation with its principal office at Pantego, Beaufort County, North Carolina. D. O. Briggs is president and general manager of Briggs Company; he owns 90% of the

capital stock and his wife owns the remaining 10%. He is also an officer and owns 30% of the capital stock in B & B Company.

Plaintiff's evidence is substantially as follows:

Plaintiff received a telephone call from Dillon, South Carolina, from a person who identified himself as "D. O. Briggs of D. O. Briggs Lumber Company of Dillon." In the telephone conversation it was agreed that plaintiff would transport by truck a load of lumber from the B & B Company plant at Pantego to a point in New Jersey, have the bill of lading receipted by the consignee and mail the receipted bill of lading to the Briggs Company at Dillon. In the conversation the freight charge was "an agreeable price made by the party who identified himself as D. O. Briggs of Briggs Lumber Company." Plaintiff delivered the lumber and mailed the bill of lading to the defendant as agreed. There were four additional telephone calls from Dillon with similar instructions. Plaintiff made five deliveries of lumber to points in New Jersey and Pennsylvania. In each instance the bill of lading was made out: "Shipper, B & B Lumber Company, Consignee (various), routing D. O. Briggs Lumber Company, Dillon, S. C." (parentheses ours). Plaintiff billed the freight charges to defendant. When the call was made for the fourth shipment of lumber, plaintiff asked if a check had been mailed to him for the freight and was told: "I am getting one off in the mail today." After two days, no check having arrived, plaintiff placed a telephone call to D. O. Briggs at D. O. Briggs Lumber Company in Dillon, S. C., and was told that Briggs was out at the time but would be instructed to call back when he came in. A person identifying himself as D. O. Briggs did call plaintiff from Dillon later in the day. Following this, the fifth delivery of lumber was made pursuant to telephone instructions from one who identified herself as D. O. Briggs' secretary. Thereafter plaintiff placed a call for D. O. Briggs of the D. O. Briggs Lumber Company at Dillon and talked to one who represented himself as D. O. Briggs. In this conversation plaintiff was told that the B & B Company was supposed to pay the freight. Plaintiff called at the office of B & B Company and was shown invoices for the five loads. These invoices showed that the freight had been deducted by the defendant. Plaintiff did not know D. O. Briggs at the time of the telephone conversations and did not know his voice. The voice was definitely the same in all the telephone conversations.

The substance of defendant's evidence is as follows: D. O. Briggs had "never requested Woodrow Everette to make shipments . . . and charge them to the D. O. Briggs Lumber Company" and "did not authorize Woodrow Everette to haul any lumber to New Jersey."

Briggs Company occasionally purchased lumber from B & B Company for delivery to Dillon but never for delivery elsewhere. Briggs had one telephone conversation with plaintiff. Plaintiff called him and asked him to pay for hauling the lumber. "I understood him to say that he went out to B & B's office to collect and they wouldn't pay him and that he was going to make me pay him." Defendant's auditor called plaintiff "to clarify who owned the account" and "explained . . . that the B & B Lumber Company was a corporation duly organized in North Carolina and the D. O. Briggs Lumber Company was a duly organized South Carolina corporation. That these corporations have no connection," except that D. O Briggs owned stock in both. Everette replied that "he had billed B & B Lumber Company for the account, but he still looked to D. O. Briggs Lumber Company for his money." Briggs was personally trying to help the B & B Company. This company did not have any credit and had to have money to operate on. He was trying to help it get started. Briggs Company had established credit with a finance company which discounted invoices after delivery and before payment by the consignees. To help B & B Company, Briggs had the receipted bills sent to him, drew 80% on them from the finance company but sent B & B Company 100% of the invoice less the discount charge of the finance company and less a service charge for bookkeeping. Purchasers sent their remittances to Briggs Company and Briggs Company settled with the finance company. No freight was deducted by Briggs Company.

The pertinent portions of the court's findings of fact, conclusions of law and judgment are as follows:

"3. In September 1958, the defendant D. O. Briggs Lumber Company, Inc., acting through its President, D. O. Briggs, contracted with the plaintiff to haul certain lumber from Beaufort County, North Carolina to certain points, at an agreed price, and upon promise to pay therefor, as follows: (The five transactions are detailed here.) (Parentheses ours.)

"The plaintiff hauled and delivered said lumber as above set out, the total charges being $840.00; no part of same has been paid the plaintiff by the defendant, and is due and owing the plaintiff by the defendant."

## CONCLUSIONS OF LAW

"1. The contract for the hauling of said lumber, which the plaintiff fulfilled on his part, is binding upon the defendant D. O. Briggs Lumber Company, Inc.

"2. The defendant is indebted to the plaintiff in the sum of $840.00 with interest from September 22, 1959."

Judgment was rendered in favor of the plaintiff and against the defendant in the sum of $840.00 together with interest and costs.

The defendant excepted and appealed, assigning errors.

*Wilkinson & Ward for defendant, appellant.*
*No counsel contra.*

MOORE, J. The parties waived trial by jury and agreed that the judge find the facts, make his conclusions of law and enter judgment. G.S. 1-184 and G.S. 1-185. If the findings of fact by the trial judge are supported by competent evidence, such findings are as binding as a verdict of the jury and are conclusive on appeal. *Bank v. Courtesy Motors,* 250 N.C. 466, 475, 109 S.E. 2d 189; *Milk Commission v. Galloway,* 249 N.C. 658, 663, 107 S.E. 2d 631.

Appellant contends that the telephone conversations admitted in evidence in this case, over his objection, are incompetent. If these telephone conversations are incompetent, it must be conceded that plaintiff's evidence is insufficient to support the findings of fact and there is error.

Telephones are important and necessary mediums of intercommunication in modern business. Courts of justice recognize the importance of telephone transactions in commerce. Subject to reasonable rules and restrictions, telephone conversations are competent and admissible in evidence in our courts. The admissibility of telephone conversations is governed by the same rules of evidence which govern the admission of oral statements made in face to face conversations, except that the party against whom the conversation is sought to be used must be identified; but the identity of the party may be established either by direct or circumstantial evidence. *Sanders v. Griffin,* 191 N.C. 447, 450-1, 132 S.E. 157. The antiphonal party may be identified by his voice if the other party to the conversation is acquainted with and recognizes the speaker's voice. *Manufacturing Company v. Bray,* 193 N.C. 350, 351, 137 S.E. 151; *State v. Hicks,* 233 N.C. 511, 518, 64 S.E. 2d 871.

". . . (T)elephone calls purporting to have been made by a person are never admissible against him without some proof identifying him as the caller." 20 Am. Jur., Evidence, Sec. 366, p. 335. ". . . (W)here the witness answers a telephone call and there is no evidence to authenticate the antiphonal speaker except that he states his name, the evidence is inadmissible as hearsay." 11 N.C. Law Review, 344;

*Powers v. Service Company,* 202 N.C. 13, 161 S.E. 689; *Manufacturing Company v. Bray, supra.* However, the identity of the person making such call may be shown by facts and circumstances arising after the call is made. ". . . (I)t is not necessary that the witness be able, at the time of hearing the telephone conversation, to identify the person with whom the conversation was had; it is sufficient if the knowledge which enabled him to make the identification was obtained afterward. Nor is it necessary in all instances that the proof of the identification be made before the introduction of the evidence of the conversation; such conversation may, in the discretion of the court, be admitted subject to identification." 20 Am. Jur., Evidence, Sec. 366, p. 334. ". . . (A)uthorities are uniform in holding that the order in which proof may be presented is within the discretion of the court." *State v. Strickland,* 229 N.C. 201, 209, 49 S.E. 2d 469.

"According to the weight of authority, evidence is admissible as to a conversation over the telephone where the witness called for a designated person or firm at his or its place of business and the person answering the call claims to be the person called for, . . . and the conversation carried on is one regarding the business transacted by such person or firm." 20 Am. Jur., Evidence, Sec. 367, p. 335. Cf. *State v. Burleson,* 198 N.C. 61, 150 S.E. 628. "Where . . . the witness testifies that he made a call for a designated individual and was informed that the person called for was not in his office at the time, a later call purporting to come from such person has been held admissible." 20 Am. Jur., Evidence, Sec. 366, p. 335; 11 N.C. Law Review, 345; *Harvester Company v. Caldwell,* 198 N.C. 751, 153 S.E. 325.

When we apply the foregoing principles to the facts of the instant case it is abundantly clear that the telephone conversations admitted in evidence are competent and admissible. Here we are dealing with a series of calls. The five calls received by Everette, if considered alone in disregard of the other evidence in the case, are inadmissible. The two calls made by Everette, if considered alone, are competent. It will be observed that Everette placed calls for D. O. Briggs at the D. O. Briggs Lumber Company in Dillon. In one instance a person purporting to be D. O. Briggs answered. In the other instance Briggs was out of his office at the time but called back later in the day. D. O. Briggs, in testifying for the defendant, stated that he received one call from Everette and that they had a conversation in which he told Everette that B & B Company owed him (Everette) for the freight. This corroborates Everette as to one of the calls and identifies D. O. Briggs. Everette testified that the voice was definitely the same in all the telephone conversations. This evidence tends to iden-

tify the antiphonal party (D. O. Briggs) in all the telephone conversations. The weight of the evidence was for the trier of the facts — the trial judge in this case.

The appellant contends further that the trial judge committed prejudicial error in the course of the trial in that the judge propounded to witnesses leading questions "pertaining to the very heart of this controversy," indicating that he entertained an opinion favorable to plaintiff's cause and thereby constituting himself plaintiff's advocate. Defendant cites no authority in support of its position.

G. S. 1-180 was originally enacted in 1796. There has been little change through the years. The title of the original act was: "An act to secure the impartiality of trial by jury, and to direct the conduct of judges in charges to the petit jury." It provides that no judge in giving a charge shall give an opinion whether a fact is fully or sufficiently proven. It has been construed to include any opinion or even an intimation of the judge at any time during the trial, calculated to prejudice either of the parties with the jury. It is "a departure from the common law rule and from the practice which prevails in the English courts, the federal courts, and in the courts of some of the states." It is to be strictly construed, and the sole purpose of this portion of the act is to prevent judges from invading the province of the jury. McIntosh: North Carolina Practice and Procedure, 2d. Ed., Vol. 2, Sec. 1514, pp. 49, 50.

Obviously the law defendant seeks to invoke has no application to the case at bar. The parties waived trial by jury. "The effect of the submission to the judge is to invest him with the dual capacity of judge and juror. He is to hear the evidence and pass upon its competency and admissibility as judge, and determine its weight and sufficiency as juror. The rules as to the admission and exclusion of evidence are not so strictly enforced as in a jury trial. . . ." McIntosh. North Carolina Practice and Procedure, 2d Ed., Vol. 1, Sec. 1373, p. 759; *Bizzell v. Bizzell*, 247 N.C. 590, 604, 101 S.E. 2d 668.

The record discloses that the trial judge did ask many leading questions at crucial points in the trial. A reading of the entire record leaves the definite impression that the questions were for the purpose of clarification and to ascertain the truth. Under the circumstances of this case it was not only the judge's privilege but his duty. The record discloses that both parties were given full opportunity to present their evidence and contentions, and that the hearing was openly, fairly and fully held. We find no error in the conduct of the trial by the learned judge.

Finally, appellant contends that if "there is sufficient evidence to support the trial court's finding of fact that a contract was entered

into between plaintiff and D. O. Briggs, . . . such contract was *ultra vires* as to defendant corporation and that same was only of benefit to one of its stockholders, D. O. Briggs."

For solution of the question posed by the foregoing argument we need refer only to G.S. 55-18, which is a part of the "Business Corporation Act" of 1955 which became effective 1 July, 1957. The pertinent portion of the Act is as follows:

"Sec. 55-18. Defense of *ultra vires*. — (a) No act of a corporation . . . shall be invalid by reason of the fact that the corporation was without capacity or power to do such act . . . but such lack of capacity or power may be asserted:

"(1) In an action by a shareholder against the corporation. . . .

"(2) In an action by the corporation or by its receiver, trustee or other legal representative, or by its shareholders in a derivative suit, against the incumbent or former officers or directors of the corporation.

"(3) In an action by the Attorney General, as provided in this chapter. . . .

"(b) This section applies to acts . . . done . . . by a foreign corporation in this State. . . ."

In view of the foregoing, it is unnecessary to call attention to the fact that D. O. Briggs owned 90% of the capital stock of the D. O. Briggs Corporation and that said corporation received benefits from the transactions with plaintiff.

In this action the findings of fact support the conclusions of law and the judgment based thereon. *Bank v. Courtesy Motors, supra.* The judgment below is

Affirmed.

HIGGINS, J., not sitting.