STATE v. THURLOW BELK

AND

STATE v. CURTIS PEARSON, JR.

AND

STATE v. FRED BERRY, JR.

(Filed 19 October, 1966.)

**1. Searches and Seizures § 1—**

Evidence upon the *voir dire* tended to show that the owner and operator of an automobile, in response to an officer's request to be allowed to take a look in the vehicle, stated that he would get the key and let the officer look in the trunk. *Held:* The consent to search that part of the automobile beyond the vision of the officers reasonably included parts of the vehicle readily observable, and the order of the court allowing introduction in evidence of the incriminating contents of a paper bag observed between the legs of one of the passengers was not error.

**2. Same—**

Passengers in an automobile may not object to evidence tending to incriminate them found in the vehicle upon a search without a warrant when the person having possession and control of the vehicle consents to the search.

**3. Constitutional Law § 30—**

Every person charged with crime is entitled to a trial before an impartial judge and an unprejudiced jury in an atmosphere of judicial calm.

**4. Criminal Law § 108—**

The trial judge is forbidden by G.S. 1-180 to express an opinion upon the evidence in any manner during the course of the trial or in his instructions to the jury.

**5. Same—**

Reference by the trial court to defendants as "three black cats in a white Buick" must be held for prejudicial error as affecting the credibility of the defendants as witnesses and injecting a prejudicial opinion of the court into the court's instructions.

APPEAL by defendants from *McLean, J.,* 23 May 1966 Criminal Schedule A Session of MECKLENBURG.

Criminal prosecutions on bills of indictment charging the defendants, Thurlow Belk, Curtis Pearson, Jr., and Fred Berry, Jr., with the crime of common law robbery. The cases were consolidated for trial. The evidence pertinent to the questions presented for decision being the same, all three cases will be considered in this opinion.

Elbert Jarrett, the prosecuting witness, testified substantially as follows: That during the evening of 9 April 1966 he and some friends, Kenneth Herndon and Robert Nixon, came from Lincolnton to a place called "Babe's and Reece" in Charlotte. After eating there,

Jarrett drove with his friends to the corner of Graham and Ninth Streets searching for a girl for Jarrett. They observed Curtis Pearson and Thurlow Belk on the corner. After some conversation, Jarrett, Pearson and Belk went to a house two or three blocks away. A short time later Pearson, Belk, Berry and Jarrett came out of the house, and Jarrett told his original companions that he would ride with Belk, Pearson and Berry and said they would all meet at Babe's and Reece. Jarrett got in the car with the three defendants, and, instead of returning to Babe's and Reece's, they drove him out in the country. He was snatched out of the car, Belk and Pearson beat him, took his property, including money, driver's license, billfold, glasses and receipt for insurance, threw him on the ground and left him there. He walked to a house where he later met police officers William Stegall and I. N. Dennis.

Officer Stegall testified, in substance, that Jarrett told him he had been "robbed" by "three guys in a 1959 white Buick," and described the vicinity where he was robbed. As a result of the conversation he and officer Dennis stopped a 1959 Buick driven by Fred Berry. Thurlow Belk was in the right rear seat and Curtis Pearson was in the right front seat. There was a brown paper bag between the legs of Thurlow Belk, which was later found to contain the property of Jarrett.

The defendants objected to the introduction into evidence of the items found in the bag and in the car, and motions were made to suppress. The jury was excused and *voir dire* was held to determine whether or not there was a lawful search. In the absence of the jury, officer Stegall testified that officer Dennis had asked permission of Berry, the driver of the automobile, to take a look in the vehicle and that Berry said "he would get the key and let them look in the trunk." He testified that he could see the bag from outside the automobile. In the paper bag were found driver's license, billfold, glasses, and receipt for insurance belonging to Jarrett. The officer further testified that when the car was originally stopped, he asked the occupants to step out and furnish him with some identification. He did not actually place anyone under arrest until after he had found the contents of the bag, just before they were taken to the station.

The trial judge ruled the evidence admissible, and it was presented to the jury upon their return.

Officer Dennis also identified the exhibits and testified to substantially the same facts as did officer Stegall.

Kenneth Herndon and Robert Nixon testified, corroborating some of the facts testified to by Jarrett, and Nixon identified the three defendants as being in the presence of Jarrett on the night of April 10, 1966.

The defendant Pearson offered evidence tending to show that he had not seen the prosecuting witness at any time until he was stopped by the officers; that he did not rob the prosecuting witness, nor was he identified by Jarrett.

The defendant Thurlow Belk offered evidence tending to show that he and his sister picked up the defendant Pearson early in the evening and returned to Belk's home. The defendant Berry arrived later and had a drink with Belk and Pearson, and Berry agreed to give them a ride to Charlotte. He had never seen Jarrett before they were stopped by police. He offered further witnesses to corroborate his testimony.

The defendant Berry offered testimony tending to show that he had gone to the Belk home about 2:00 o'clock A.M., had had a drink, and when he was about to leave the defendants Pearson and Belk requested a ride back to town. He had gone to the Belk home to see Thelma Belk, and he did not know Pearson and Belk, and had never seen them before. On the way back to town the officers stopped the automobile. Berry did not know Jarrett and had never seen him until he was stopped by the officers.

The jury returned a verdict of guilty of common law robbery as to all three defendants. Judgments were entered by the court sentencing each defendant to not less than nine nor more than ten years. The defendants appealed, assigning errors.

*Attorney General Bruton and Assistant Attorney General George A. Goodwyn for the State.*
*Charles B. Merryman, Jr., for defendant Thurlow Belk.*
*James J. Caldwell for defendant Curtis Pearson, Jr.*
*Francis O. Clarkson, Jr., for defendant Fred Berry, Jr.*

BRANCH, J. Defendants contend that the trial court erred in denying their motions to suppress the evidence derived from the search of the automobile and in allowing testimony in reference thereto. In considering this contention it becomes necessary to first consider the case against defendant Fred Berry, Jr., the driver in possession and control of the automobile.

As to defendant Berry: In the case of *State v. Moore,* 240 N.C. 749, 83 S.E. 2d 912, Denny, J. (later C.J.), speaking for the Court, stated: "It is generally held that the owner or occupant of premises, or the one in charge thereof, may consent to a search of such premises and such consent will render competent evidence thus obtained. Consent to the search dispenses with the necessity of a search warrant altogether. (Citing cases)." This therefore poses the question

of whether the defendant Fred Berry, Jr., consented to a search of his automobile. On this question the court, in the absence of the jury, heard testimony as to whether the search of the defendant's automobile was made with his consent. The evidence taken by the court on *voir dire* was to the effect that when one of the officers asked for permission to take a look in the vehicle, Berry replied that he "would get the key and let us (the officers) look in the trunk." It would not seem reasonable that this answer was a limitation as to where the officers might search. The record reveals that the officers were able to observe all of the defendants sitting in the automobile and had seen the paper bag in the possession of one of the defendants. Hence, it would seem reasonable that when the owner and operator of the automobile made accessible to the officers that portion of the automobile which was beyond their vision and to which they did not have ready physical access, he gave consent that any part of the automobile might be searched. This is buttressed by the fact that the record does not reveal any objection or protest by any one of the defendants when the search was conducted.

In the case of *State v. Moore, supra,* the facts show that officers, without search warrant, went to the premises of the defendant, which was a one-story wooden building. The front room of the house was being used as a dance hall and for the sale of canned goods, cigarettes and soft drinks. There was a hall or bedroom between the front room and the kitchen. The kitchen was part of defendant's living quarters. The officers in this case requested permission to look around the premises for stolen goods, to which the defendant replied, "Go ahead, it is not around here, but you are welcome to search." The store room or dance hall was searched, and then the officers went through an open door into the kitchen, where they found a tea kettle full of nontaxpaid whiskey. At the trial the defendant objected and moved to strike evidence with reference to liquor found in his kitchen, on the ground that the officers did not have a search warrant and therefore the evidence was incompetent. There was squarely presented the question whether the defendant consented to the search of the whole premises, including his kitchen. The Court answered this question in the affirmative, and held that "The ruling of a trial judge on *voir dire,* as to the competency or incompetency of evidence, will not be disturbed if supported by any competent evidence. (Citing cases) Just as the voluntariness of a confession is the test of admissibility, . . . so is the consent of the owner or person in charge of one's home or premises essential to a valid search thereof without a search warrant."

In the instant case the judge, after conducting a *voir dire* as to

the competency of the evidence, ruled that the evidence was admissible. Certainly the record reveals some competent evidence to support the judge's finding on *voir dire*. It is our opinion, and we so hold, that the search was valid and that the trial court did not commit error in denying defendants' motions to suppress the evidence.

As to the defendants Thurlow Belk and Curtis Pearson: Our conclusion as to defendant Fred Berry, Jr., would equally apply to both of these defendants. Moreover, these defendants were passengers in the automobile which was in the possession and control of Fred Berry. This Court clearly held in the case of *State v. Hamilton*, 264 N.C. 277, 141 S.E. 2d 506, that passengers in a car may not object to incriminating evidence found in the car upon search without a warrant when the person having possession and control of the car consents to the search. Therefore, the contentions of Thurlow Belk and Curtis Pearson as to this assignment of error are without merit.

The defendants contend that the court, purporting to quote from testimony, committed error in its charge to the jury by using the term "three black cats in a white Buick" when referring to the defendants, and that this reference unduly influenced the jury and was an expression of opinion by the court, in violation of G.S. 1-180. We have carefully reviewed the record and we cannot find that any witness used the term "three black cats in a white Buick."

"Every person charged with crime has an absolute right to a fair trial. By this it is meant that he is entitled to a trial before an impartial judge and an unprejudiced jury in an atmosphere of judicial calm." *State v. Canipe*, 240 N.C. 60, 81 S.E. 2d 173.

"It can make no difference in what way or manner or when the opinion of the judge is conveyed to the jury, whether directly or indirectly, by comment on the testimony of a witness, by arraying the evidence unequally in the charge, by imbalancing the contentions of the parties, *by the choice of language* in stating the contentions, or by the general tone and tenor of the trial. The statute forbids any intimation of his opinion in any form whatever, it being the intent of the law to insure to each and every litigant a fair and impartial trial before the jury." (Emphasis added). *State v. Simpson*, 233 N.C. 438, 64 S.E. 2d 568.

Both the courts and those engaged in the active trial practice recognize the strong influence a trial judge may wield over the jury. "The trial judge occupies an exalted station. Jurors entertain great respect for his opinion, and are easily influenced by any suggestion coming from him. As a consequence, he must abstain from conduct or language which tends to discredit or prejudice the accused or his cause with the jury. G.S. 1-180." *State v. Carter*, 233 N.C. 581, 65

S.E. 2d 9. This principle was also enunciated by Walker, J., in the case of *Withers v. Lane,* 144 N.C. 184, 56 S.E. 855, in these words: "The Judge should be the embodiment of even and exact justice. He should at all times be on the alert, lest, in an unguarded moment, something be incautiously said or done to shake the wavering balance which, as a minister of justice, he is supposed, figuratively speaking, to hold in his hands. Every suitor is entitled by the law to have his cause considered with the 'cold neutrality of the impartial judge' and the equally unbiased mind of a properly instructed jury. This right can neither be denied nor abridged."

It becomes necessary for us to consider the probable effect upon the jury of the use of the term "three black cats in a white Buick."

Webster's Seventh New Collegiate Dictionary defines "cat" as "a carnivorous mammal *(Felis catus)* long domesticated and kept by man as a pet or for catching rats and mice." In the Dictionary of American Slang: Wentworth & Ferner, ed., Thomas Y. Crowell Co., N. Y., 1960, we find this definition of "cat": "A man who dresses in the latest style and pursues women; a dude, a sport; one who tomcats; one who is worldly, wise, or hep."

We doubt that the jury would accept the judge's phrase as describing the defendants as *"felis catus"* but would more likely associate this phrase with the words used in the slang and everyday vernacular. Whichever connotation the jury might accept would not be complimentary, but, at best, would tend to be derogatory and prejudicial.

In the instant case the expression used in the judge's charge might well have affected the credibility of the defendants as witnesses and injected a prejudicial opinion of the court into the instructions given by the court. This entitles the defendants to a new trial.

We find no prejudicial error in the other assignments of error brought forward by the defendants.

New trial as to each defendant.