STATE OF NORTH CAROLINA v. JACKIE COLEMAN FRAZIER

No. 1

(Filed 14 April 1971)

1. **Criminal Law § 99— impartiality of the trial court — scope of statute**
   The statute imposing the duty of absolute impartiality on the trial judge has been construed to include any opinion or intimation of the judge at any time during the trial which is calculated to prejudice either of the parties in the eyes of the jury. G.S. 1-180.

2. **Criminal Law § 99— examination of witnesses — expression of opinion by court**
   In exercising its duty of controlling the examination of a witness the court must not intimate any opinion either of the witness or of his credibility.

3. **Criminal Law § 99— ridicule of witness**
   G.S. 1-180 prohibits any ridicule that casts aspersions on the testimony of a witness and thus damages his credibility.

4. **Criminal Law §§ 99, 170— remarks of trial court — prejudicial effect — new trial**
   Cumulative effect of trial court's remarks was prejudicial to the defendant and warranted a new trial, where the remarks included the following statements: "It's your case. Try it any way you want to" [to defense counsel]; "Let me inform you, Mr. Frazier, don't come out with any short answers in my court" [to defendant]; "You don't mean he's still there" [to a defense witness, in response to her testimony that her husband did not leave the home on the night of the crime].

   Justice LAKE dissenting.

State v. Frazier

APPEAL by defendant from judgment of *Bailey, J.*, 26 June 1967 Special Criminal Session of MECKLENBURG Superior Court.

Jackie Coleman Frazier, Donald Laughter, Andy Gay Laughter, Harold Carr and John R. Dossett were charged in a bill of indictment with unlawfully placing and burning a cross on the property of Genius C. Evans without first obtaining written permission from the owner or occupier of the premises, a violation of G.S. 14-12.12.

The State's evidence tends to show that on the morning of 31 December 1966 Genius C. Evans and his wife discovered a partially burned cross standing in their front yard. They had not given written or oral permission to anyone to place or burn a cross on their premises. The police were notified and the cross was removed from the premises.

Freddy C. Smith and Frederick Davidson Feimster each testified that he was a member of the Ku Klux Klan and attended a Klan meeting on Friday night, 30 December 1966; that the five defendants in this case were present at that meeting; that following the meeting all of them went to Andy Laughter's house about 10:15 p.m. and constructed two crosses; that Andy and Donald Laughter wrapped the crosses in burlap and Jackie Coleman Frazier furnished some type of liquid fuel to put on the crosses so they would burn better; that the crosses were then put in Andy Laughter's car and all five defendants proceeded to the Evans home on Hutchinson-McDonald Road; that one of the crosses was taken from Andy Laughter's car and set up in the Evans front yard. "The cross was set in a stand which we built at the same time we built the cross and it was ignited and then we got back in the automobiles and left. As we pulled away from the house, the cross was burning."

Each of the defendants, as well as other witnesses presented in their behalf, testified that all five defendants were at a surprise birthday party at John R. Dossett's home on the night of 30 December 1966 and until about 2 a.m. on the morning of 31 December 1966; that they were not with Freddy C. Smith or Frederick Davidson Feimster at any time that night and did not participate in the cross burning activities described by those two witnesses.

All five defendants were convicted. Defendant Jackie Coleman Frazier was sentenced to eighteen months imprisonment

and gave notice of appeal in apt time. He was allowed thirty days in which to prepare and serve statement of case on appeal. His counsel at that time, Lester V. Chalmers, Jr., failed to perfect the appeal within the allotted time and on 20 September 1967 Judge Snepp, on motion of the solicitor, dismissed the appeal. Thereafter, defendant employed his present counsel and petitioned this Court for permission to perfect a delayed appeal. His petition, treated as a petition for *certiorari* to the Superior Court of Mecklenburg County to send up the record as a delayed appeal, was allowed. The appeal is now before this Court for consideration of the assignments of error noted in the opinion.

*Osborne and Griffin by Wallace S. Osborne, Attorneys for defendant appellant.*

*Robert Morgan, Attorney General; James L. Blackburn, Staff Attorney, for the State of North Carolina.*

HUSKINS, Justice.

No constitutional questions are raised on this appeal. Appellant brings forward three assignments of error, but we find it necessary to discuss only one of them, to wit: Did various remarks of the judge in the course of the trial amount to an expression of opinion on the evidence in contravention of G.S. 1-180?

At the outset we are faced with the fact that oftentimes the printed word does not capture the emphasis and the nuances that may be conveyed by tone of voice, inflection, or facial expression. In *Towne v. Eisner,* 245 U.S. 418, 62 L. Ed. 372, 38 S.Ct. 158 (1918), Mr. Justice Holmes said: "A word is not a crystal, transparent and unchanged; it is the skin of a living thought and may vary greatly in color and content according to the circumstances at the time in which it is used." Hence we can only read the record and adjudge by reason and deduction whether the remarks assigned as error were so disparaging in their effect that they could reasonably be said to have prejudiced the defendant. *State v. Owenby,* 146 N.C. 677, 61 S.E. 630 (1908); *State v. Carter,* 233 N.C. 581, 65 S.E. 2d 9 (1951); *Kanoy v. Hinshaw,* 273 N.C. 418, 160 S.E. 2d 296 (1968).

[1] G.S. 1-180 imposes on the trial judge the duty of absolute impartiality. *Nowell v. Neal,* 249 N.C. 516, 107 S.E. 2d 107

(1959). It forbids the judge to intimate his opinion in any form whatever, "it being the intent of the law to insure to each and every litigant a fair and impartial trial before the jury." *State v. Owenby,* 226 N.C. 521, 39 S.E. 2d 378 (1946). It has been construed to include any opinion or intimation of the judge at any time during the trial which is calculated to prejudice either of the parties in the eyes of the jury. *State v. Douglas,* 268 N.C. 267, 150 S.E. 2d 412 (1966); *Everette v. Lumber Company,* 250 N.C. 688, 110 S.E. 2d 288 (1959). "Both the courts and those engaged in the active trial practice recognize the strong influence a trial judge may wield over the jury. 'The trial judge occupies an exalted station. Jurors entertain great respect for his opinion, and are easily influenced by any suggestion coming from him. As a consequence, he must abstain from conduct or language which tends to discredit or prejudice the accused or his cause with the jury. G.S. 1-180.' " *State v. Belk,* 268 N.C. 320, 150 S.E. 2d 481 (1966).

As stated by Mr. Justice Black in *Illinois v. Allen,* 397 U.S. 337, 25 L. Ed. 2d 353, 90 S.Ct. 1057 (1970) : "It is essential to the proper administration of criminal justice that dignity, order, and decorum be the hallmarks of all court proceedings in our country." To that end "[t]he judge should be the embodiment of even and exact justice. He should at all times be on the alert, lest, in an unguarded moment, something be incautiously said or done to shake the wavering balance which, as a minister of justice, he is supposed, figuratively speaking, to hold in his hands. Every suitor is entitled by the law to have his cause considered with the 'cold neutrality of the impartial judge' and the equally unbiased mind of a properly instructed jury. This right can neither be denied nor abridged." *Withers v. Lane,* 144 N.C. 184, 56 S.E. 855 (1907).

It now becomes our duty to apply these principles to the remarks of the trial court which form the basis of defendant's assignment of error. Each dialogue occurred while the defendant was offering evidence. The first remark was made when defendant Frazier was on the stand and was being examined by his attorney, Mr. Chalmers. The attorney said: "I hand you here State's Exhibit No. 3 and ask . . . Your Honor, I am sorry, I referred to these Exhibits as State's Exhibits, they are Defendant's Exhibits." The trial judge replied: "It's your case. Try it any way you want to." While this remark was completely

gratuitous and unnecessary, we cannot say that, standing alone, it was prejudicial. Nevertheless, when remarks from the bench tend to belittle and humiliate counsel, defendant's case can be seriously prejudiced in the eyes of the jury. See Annotation, Remarks or acts of trial judge criticizing, rebuking, or punishing defense counsel in criminal case, as requiring new trial or reversal, 62 A.L.R. 2d 166 (1958).

A moment later, during cross-examination of defendant by the State, the defendant was asked: "Mr. Frazier, the cross wasn't burning when you got out of the car and put it in the yard, was it, isn't that right?" The defendant answered: "Suppose you give me a question and I'll answer it." At this point the court interjected: "Wait a minute. Let me inform you, Mr. Frazier, don't come out with any short answers in my court." The defendant now contends that this statement indicated to the jury that the court was antagonistic toward him.

[2] "It is both the right and the duty of the presiding judge to control the examination and cross-examination of witnesses, both for the purpose of conserving the time of the court, and for the purpose of protecting the witness from prolonged and needless examination." *State v. Mansell,* 192 N.C. 20, 133 S.E. 190 (1926). Nevertheless, in doing so the court must not intimate any opinion either of the witness or his credibility. *State v. Belk, supra.* The remark of the court here was undoubtedly calculated to impress upon the witness that he should keep in mind the gravity of the situation and control his attitude accordingly. As such, an appropriate admonition was entirely in order. The language used by the judge, although not the wisest choice, is insufficient standing alone to constitute reversible error.

The third remark of which defendant complains occurred when Donald Laughter was being examined by Attorney Chalmers, who represented all five defendants. Laughter had denied placing or burning a cross on the night in question. Attorney Chalmers then asked: "Mr. Laughter, have you at any time, anywhere . . . " The court interrupted, saying: "Mr. Chalmers, we are only trying him for one place." Defendant contends this remark clearly implied to the jury that defendants had burned other crosses at other times and places and was highly prejudicial. The State contends, on the other hand, that the court was

State v. Frazier

only trying to keep the examination within the bounds of relevancy. In our view, the defendant's position is more consonant with reason. Its import may well have found its mark in the minds of the jurors. *Upchurch v. Funeral Home*, 263 N.C. 560, 140 S.E. 2d 17 (1965). See Annotation, Prejudicial effect of trial judge's remarks, during criminal trial, disparaging accused, 34 A.L.R. 3d 1313 (1970).

The fourth incident occurred during the direct examination of Betty Lou Dossett, wife of defendant John R. Dossett. In response to a question by defense counsel, she testified that her husband was at home at 5:30 p.m. on 30 December 1966 "and he did not depart from the residence either after 5:30 p.m. or 12 o'clock midnight." The court interjected: "You don't mean he's still there?"

[3] While this remark was probably intended as humorous, it tends to ridicule the witness and impair her credibility in the eyes of the jury. G.S. 1-180 prohibits any ridicule that casts aspersions on the testimony of a witness and thus damages his credibility. "It has been the immemorial custom for the trial judge to examine witnesses who are tendered by either side whenever he sees fit to do so. . . . " *State v. Horne*, 171 N.C. 787, 88 S.E. 433 (1916). Even so, the law requires such examinations to be conducted with care and in a manner which avoids prejudice to either party. "If by their tenor, their frequency, or by the persistence of the trial judge they tend to convey to the jury in any manner at any stage of the trial the 'impression of judicial leaning,' they violate the purpose and intent of G.S. 1-180 and constitute prejudicial error." *State v. Colson*, 274 N.C. 295, 163 S.E. 2d 376 (1968). *Accord State v. Lea*, 259 N.C. 398, 130 S.E. 2d 688 (1963); *State v. Peters*, 253 N.C. 331, 116 S.E. 2d 787 (1960); *Andrews v. Andrews*, 243 N.C. 779, 92 S.E. 2d 180 (1956); *State v. McRae*, 240 N.C. 334, 82 S.E. 2d 67 (1954).

The fifth comment by the court to which exception is taken occurred during the examination of the same witness a few minutes later. Attorney Chalmers elicited the same testimony from the witness, *i.e.*, that her husband was at home all evening. The State objected on grounds of repetition and the objection was sustained. Mr. Chalmers then inquired: "May I get her answer in the record your Honor?" The court replied: "You

may not. It's been answered three times." An examination of the record discloses that the court was correct. The answer of the witness is indeed in the record three times. Since the court must be left free to keep the examination of witnesses under control and within the bounds of lawful, relevant, and non-repetitive inquiry, we hold that this remark was not error.

[4] As already noted, some of the judge's comments run counter to the intent and meaning of G.S. 1-180. Some do not. Any one of them standing alone, even when erroneous, might not be regarded as prejudicial. But when all the incidents are viewed in light of their cumulative effect upon the jury, we are constrained to hold that the cold neutrality of the law was breached to the prejudice of this defendant. The content, tenor, and frequency of the remarks, and the persistence on the part of the trial judge portray an antagonistic attitude toward the defense and convey to the jury the impression of judicial leaning prohibited by G.S. 1-180. This requires a new trial.

We have examined the remaining assignments of error and find nothing of sufficient import to merit discussion.

For the reasons above set out, there must be a

New trial.

Justice LAKE dissenting.

The motion to quash the indictment should have been allowed and, therefore, the judgment below should be reversed for the reason that the indictment does not charge a criminal offense. I, therefore, dissent from the majority opinion directing a new trial.

The statute in effect at the time of the alleged acts of the defendant, G.S. 14-12.12, made the conduct therein proscribed a crime. The difficulty is the bill of indictment does not charge the defendant with the conduct proscribed by the statute.

The acts declared by this statute to be a crime are: "to *place* or cause to be *placed* on the property of another * * * a *burning* or *flaming* cross or any manner of exhibit in which a *burning* or *flaming* cross, real or simulated, is a whole or a part, without first obtaining written permission of the owner or occupier of the premises so to do." (Emphasis added.)

This statute does not make criminal the placing of a burning circle or triangle on the property of another without his permission, irrespective of the purpose or the effect of such act. Clearly then, had this indictment charged the defendant with placing upon the property of Evans a burning circle, the motion to quash should have been allowed. Why? Simply because the Legislature did not in this statute make that a crime.

The conduct made criminal by this statute is the *placing* of a *burning* or *flaming* cross on the property of another without his permission. A cross, not burning or flaming when placed upon the property, is as truly outside the limits of this statute as is a burning circle. Justice Holmes' well known statement in *Towne v. Eisner*, 245 U.S. 418, 62 L. Ed. 372, 38 S.Ct. 158, "A word is not a crystal, transparent and unchanged; it is the skin of a living thought and may vary greatly in color and content according to the circumstances at the time in which it is used," may not be taken out of context to make criminal that which the Legislature has not declared to be so, and, of course, the majority does not so use his statement here.

It is fundamental in our system of law that the words used in a criminal statute must be strictly construed and may not be enlarged by construction to take in offenses not clearly described. *State v. Gainey*, 273 N.C. 620, 160 S.E. 2d 685; *State v. Garrett*, 263 N.C. 773, 140 S.E. 2d 315; *Milk Producers Co-op v. Melville Dairy, Inc.*, 255 N.C. 1, 120 S.E. 2d 548; *State v. Mitchell*, 217 N.C. 244, 7 S.E. 2d 567; *State v. Ingle*, 214 N.C. 276, 199 S.E. 10; *State v. Railroad*, 168 N.C. 103, 82 S.E. 963. In *State v. Scoggin*, 236 N.C. 1, 10, 72 S.E. 2d 97, Justice Barnhill, later Chief Justice, said, "[I]t is axiomatic that penal statutes are construed strictly against the State and liberally in favor of the private citizen." While it is true that a word in such statute, fairly susceptible of two or more meanings, should be construed so as to avoid giving the statute a ridiculous interpretation, *State v. Pinyatello*, 272 N.C. 312, 158 S.E. 2d 596, it is also a fundamental principle of statutory construction that when a word has a single, clear meaning, it should be given that meaning in the application of the statute, in the absence of anything in the statute to show a different meaning was intended. *Duke Power v. Clayton*, 274 N.C. 505, 510, 164 S.E. 2d 289; *State v. Wiggins*, 272 N.C. 147, 153, 158 S.E. 2d 37. The reason is, where the meaning of the words used in the statute is plain, there is

no room for construction and for the court to engage therein, so as to depart from the clear and ordinary meaning of the words used by the Legislature, is to engage in judicial legislation. *School Commissioners v. Aldermen,* 158 N.C. 191, 196, 73 S.E. 905; *Asbury v. Albemarle,* 162 N.C. 247, 250, 78 S.E. 146. If this be true in the construction of a statute involved in civil action, it is even more so with reference to the construction of a criminal statute, so as to make criminal that which the plain meaning of the words used does not include.

In *School Commissioners v. Aldermen, supra,* at page 196, Justice Hoke, speaking for the Court, said:

"Where the statute is free from ambiguity, explicit in its terms and plain meaning, it is the duty of the courts to give effect to law as it is written, and they may not resort to other means of interpretation. * * * *Even though the Court should be convinced that some other meaning was intended by the lawmaking power, and even though the literal interpretation should defeat the very purposes of the enactment,* still the explicit declaration of the Legislature is the law, and the courts must not depart from it * * * ." (Emphasis added.)

In *Nance v. Railroad,* 149 N.C. 366, 63 S.E. 116, Justice Henry G. Connor, speaking for this Court, said at pages 372-374:

" 'What the legislative intent was can be derived only from the words they have used. The spirit of the act must be extracted from the words of the act and not from conjecture *aliunde.' Story, J.,* in *Gardner v. Collins,* 27 U.S. 93. '* * * It is not allowable to interpret what has no need of interpretation, or, when the words have a definite and precise meaning, to go elsewhere in search of conjecture in order to restrict or extend the meaning. Statutes should be read and understood according to the natural and most obvious import of the language without resorting to subtle and forced construction for the purpose of either limiting or extending their operation.' *McCluskey v. Cornwell,* 11 N.Y. 593. * * * In *Coe v. Lawrence,* 72 E.C.L. (1 Ellis & B.) 516, it was sought to recover a penalty for violating a statute. Defendant claimed that he was not within its terms. It was insisted that the Court could find an intention to

State v. Frazier

include him. *Lord Campbell, C.J.,* said: 'We are not justified in inserting words for the purpose of extending a penalty clause to cases not expressly comprehended in it. * * *' *Lord Coleridge* said: 'I never heard that it was allowable to insert words for the purpose of extending a penal clause. * * * And even if that were not so, it is quite wrong to alter the language of a statute for the purpose of getting at its meaning,' and of the same opinion were all the judges. * * * If, as is manifest, the Court cannot insert words to enlarge its scope, certainly they may not strike them out to reach a class of persons which they clearly exclude."

We are here dealing with a matter of far more significance to the people of this State than the punishment of this defendant for the conduct alleged in the bill of indictment, senseless, offensive and reprehensible though it be. As Justice Sharp said so aptly in *State v. Cobb,* 262 N.C. 262, 266, 136 S.E. 2d 674:

"A man's conduct must be judged by the law as it exists at the time his conduct is called into question and not by the law as he and others think it should be rewritten in the interest of social justice. * * * When a court, in effect, constitutes itself a superlegislative body, and attempts to rewrite the law according to its predilections and notions of enlightened legislation, it destroys the separation of powers and thereby upsets the delicate system of checks and balances which has heretofore formed the keystone of our constitutional government."

This sound observation is even more pertinent when the proposal is to enlarge the plain meaining of the words of a criminal statute so as to extend it to conduct not within such meaning.

How can there be any doubt as to what is meant by a "burning or flaming cross?" "Burning," as contrasted with "flaming," would obviously include "smoldering," but an object which is not ignited at all is neither "flaming" nor "burning." To place on the property of another a cross is not a violation of this statute. To ignite a cross on the property of another is not a violation of this statute, irrespective of who put it there or how long it has been there. The offense created by this statute is the *placing* of a *burning* or *flaming* cross on the property of another without his permission. To extend this statute to cover

the placing of an unignited cross, followed by setting it on fire, is as far beyond the power of this Court as it would be to extend it to the placing of a burning triangle, a burning crescent or a burning hammer and sickle. Surely, this statute does not make either of those acts a crime, and it would not cover such an act even if the Ku Klux Klan were to adopt such a burning object as a symbol of its presence.

The bill of indictment very plainly alleges the defendant and his companions placed a cross on the Evans property and "set fire to same." Consequently, it does not allege the conduct which the statute makes criminal—the placing of a burning or flaming cross—and the motion to quash should have been allowed.

Since the indictment charged no crime, we do not reach the matters discussed in the majority opinion. If those questions were before us, I should concur in the views of the majority concerning them.