STATE OF NORTH CAROLINA v. JOE WALTER LOWERY AND BOBBY GRAHAM

No. 7112SC571

(Filed 20 October 1971)

**Criminal Law §§ 99, 170— conduct of trial judge — questioning of defendants — expression of opinion on defendants' credibility**

In a prosecution of two defendants for discharging firearms into an occupied building, the trial judge's questioning of the defendants amounted to cross-examination and constituted an expression of opinion on the credibility of defendants' testimony, where the questions included the following: (1) "At the time you fired your shotgun you knew there was someone in the Bertha Leslie's Club, didn't you?"; (2) "If you thought there was trouble brewing outside, why didn't you stay in your house rather than get your gun and go out and get in it?"; and (3) "What have you been tried and convicted for?". G.S. 1-180.

APPEAL by defendants from *Cooper, Judge,* 26 April 1971 Session of Superior Court held in HOKE County.

The defendants Joe Walter Lowery (Lowery) and Bobby Graham (Graham) were charged in separate bills of indictment with discharging firearms into an occupied building; to wit, Bertha Leslie's Club, in violation of G.S. 14-34.1. Upon the defendants' pleas of not guilty, the State offered evidence tending to show the following: At about 10:15 p.m. on 24 October 1970 Jimmy McMillian and Nathaniel Lesley were shooting pool in the Bertha Leslie Club which is located across the highway from the Hollywood Grill in Hoke County. McMillian was shot in the back of the head and was taken to Cape Fear Valley Hospital where shotgun pellets were removed from the back of his head. Lesley was hit in the chest by a .22 caliber rifle bullet.

Deputy Sheriff Harvey Young who investigated the incident testified that he observed holes in the cinder blocks on the outside of Bertha Leslie's Club and windows were broken. He testified that the damage he observed could have been caused by either rifle bullets or buckshot.

At about 9:30 or 10:00 p.m. on 24 October 1970 John Wayne Locklear, accompanied by his brother, Jimmy Locklear, and one Nelson Tyler went to the Hollywood Grill where he heard the defendant Graham tell the defendant Lowery "that if there was going to be any shooting they were going to do it," and the defendant Lowery said something to the defendant Graham about "a little white building and wanting to blow it off the map."

The witness John Wayne Locklear testified:

" . . . That Joe Walter Lowery at that time had a shotgun and Bobby Graham had a shotgun. That after Tyler got the rifle Bobby Graham went to the left of the car, Nelson went around in the dark somewhere which he did not see and Lowery walked out on the road in sight of the building. That thereafter he saw Bobby Graham and Joe Walter Lowery fire their guns. That the guns were pointed toward the building but could have been shooting over it. That he did see fire coming out of the gun that Bobby Graham had and after hearing shotgun blasts heard the automatic rifle go off several times. That after the shots were fired he and Jimmy Locklear got out and went in the Hollywood Grill."

The defendant Lowery testified that he saw Nelson Tyler fire the automatic rifle at the feet of an individual coming out

of the Bertha Leslie Club, and that when Nelson Tyler pointed the rifle at him he fired his shotgun into the air, but at no time did he fire his gun at the Club. He also testified that he heard other weapons being discharged.

The defendant Graham testified that on the evening in question he saw the defendant Lowery at the Hollywood Grill and heard guns being discharged and that he had his shotgun but that at no time did he fire the weapon. The defendant Graham denied that he made any statement to the defendant Lowery that if any shooting was going to be done they were going to do it.

The jury found both defendants guilty as charged. Each defendant was sentenced to prison for three years. The defendants appealed.

*Attorney General Robert Morgan and Assistant Attorney General William F. Briley for the State.*

*Philip A. Diehl for Joe Walter Lowery and Assistant Public Defender William S. Geimer for Bobby Graham, defendant appellants.*

HEDRICK, Judge.

By appropriate assignments of error the defendants contend the court expressed an opinion as to the credibility of the defendants and their other witnesses, in violation of the provisions of G.S. 1-180.

In *State v. Belk*, 268 N.C. 320, 150 S.E. 2d 481 (1956), Justice Branch quoted with approval from *State v. Carter*, 233 N.C. 581, 65 S.E. 2d 9 (1951), as follows:

 " 'The trial judge occupies an exalted station. Jurors entertain great respect for his opinion, and are easily influenced by any suggestion coming from him. As a consequence, he must abstain from conduct or language which tends to discredit or prejudice the accused or his cause with the jury. G.S. 1-180.' "

In *State v. Frazier*, 278 N.C. 458, 180 S.E. 2d 128 (1971), Justice Huskins said:

State v. Lowery

" 'It has been the immemorial custom for the trial judge to examine witnesses who are tendered by either side whenever he sees fit to do so. . . . ' *State v. Horne,* 171 N.C. 787, 88 S.E. 433 (1916). Even so, the law requires such examinations to be conducted with care and in a manner which avoids prejudice to either party. 'If by their tenor, their frequency, or by the persistence of the trial judge they tend to convey to the jury in any manner at any stage of the trial the "impression of judicial leaning," they violate the purpose and intent of G.S. 1-180 and constitute prejudicial error.' *State v. Colson,* 274 N.C. 295, 163 S.E. 2d 376 (1968). *Accord State v. Lea,* 259 N.C. 398, 130 S.E. 2d 688 (1963) ; *State v. Peters,* 253 N.C. 331, 116 S.E. 2d 787 (1960) ; *Andrews v. Andrews,* 243 N.C. 779, 92 S.E. 2d 180 (1956) ; *State v. McRae,* 240 N.C. 334, 82 S.E. 2d 67 (1954)."

In North Carolina it is improper for a trial judge to question a witness for the purpose of impeaching his testimony. *State v. Perry,* 231 N.C. 467, 57 S.E. 2d 774 (1950). However, it is a well settled rule in this State that a trial judge may ask questions of a witness in order to obtain a proper understanding and clarification of the witness' testimony. *State v. Strickland,* 254 N.C. 658, 119 S.E. 2d 781 (1961) ; *State v. Humbles,* 241 N.C. 47, 84 S.E. 2d 264 (1954) ; *State v. Stevens,* 244 N.C. 40, 92 S.E. 2d 409 (1956) ; *State v. Furley,* 245 N.C. 219, 95 S.E. 2d 448 (1956).

After the defendant Lowery had testified on both direct and cross-examination, the record reveals that the judge asked the defendant the following question:

"Mr. Lowery, at the time you fired your shotgun you knew there was someone in the Bertha Leslie Club, didn't you?"

After the defendant Graham had testified on direct and cross-examination, the record reveals that the following occurred between the judge and the defendant Graham:

"Q. Just a minute please, Mr. Graham, if you thought there was trouble brewing outside, why didn't you stay in your house rather than get your gun and go out and get in it?

A. See, the last time they had an incident, people standing around next to it, went the only way they could go, and to

go down to get the police crawled out the backdoor. And my children sleep in the front. The last time the majority of the people ran in there and it is the first place would be shooting; and that is when I told my wife I was going to get the gun.

Q. You knew there was trouble going on and you got your gun and went out to get in it?

A. No, sir, I went to stop it, keep it from going around my house.

Q. What have you been tried and convicted for?

A. Accessory after the fact to auto larceny and worthless check.

Q. What else?

A. That is about all.

Q. About all?

A. That is it."

We have carefully examined all of the questions put to the defendants by the judge in the light of their testimony and all the attendant facts and circumstances of the case, and we cannot say the questions were calculated to clarify the defendants' testimony. The questions propounded by the judge were in the nature of cross-examination, and could have indicated to the jury that the court was not impartial. Whatever the purpose of the questions was, the cumulative effect surely tended to impeach the defendants and the credibility of their testimony.

It is our opinion that the judge committed prejudicial error by inadvertently expressing an opinion as to the credibility of the defendants as witnesses, in violation of G.S. 1-180.

The defendants have additional assignments of error which we do not discuss here since they are not likely to occur on a new trial.

For the reasons stated, each defendant is entitled to a

New trial.

Chief Judge MALLARD and Judge CAMPBELL concur.