RUFUS SANDERS v. JOHN H. GRIFFIN AND WIFE, SARAH E. GRIFFIN, B. J. BOYLES AND WIFE, LUCY E. BOYLES, AND THE FIRST NATIONAL BANK OF WILSON, NORTH CAROLINA.

(Filed 24 March, 1926.)

**1. Evidence—Telephone—Conversations—Hearsay—Circumstantial Evidence.**

Where a telephone conversation is otherwise competent, it is not objectionable for a witness who has heard it only from one end of the line to testify to what he had heard, when the speaker at the other end has been sufficiently identified by circumstantial evidence, and the part testified to and other circumstances in evidence clearly indicate the subject-matter of the conversation as bearing upon certain material facts, though other parts of the conversation cannot be given by the witness testifying.

**2. Contracts—Parties—Beneficiaries—Actions—Bills and Notes—Collateral Security.**

Where a bank has loaned money on the note of the borrower, with a note secured by mortgage as collateral under an agreement that the collateral note should not be nor was it marked paid: *Held*, the bank, relying on this agreement and lending the money on the faith that it should not be canceled gets a good title to the collateral note.

**3. Appeal and Error—Evidence—Reference—Findings.**

The approval of the trial judge of the findings of the referee in the case referred, are not reviewable on appeal when they are supported by sufficient legal evidence.

APPEAL from *Cranmer, J.,* at November Term, 1925, of WILSON. No error.

At May Term, 1925, by consent, the action was referred under the following order: "In the above entitled case, by consent, it is ordered that this action be referred to David Isear, referee, who will take the testimony of such witnesses as may be offered by the parties hereto and report his findings of fact and conclusions of law thereon to this court. It is further ordered that if no exceptions are filed to the findings of fact and conclusions of law, then this action is remanded to the clerk of the Superior Court of Wilson County for final judgment and disposition."

On 3 August, 1925, the referee filed his report, together with the evidence taken. The findings of fact are as follows:

"A. That on or about the 5th day of November, 1920, Rufus Sanders sold to John H. Griffin a tract of land in Wilson County, for $9,000.00, the purchase price being evidenced by six notes of $1,500.00 each, one due ninety days from date, and the other five due 5 November, 1921, 1922, 1923, 1924, and 1925, respectively, the notes being secured by mortgage given by Griffin to Sanders upon the land, recorded in Book 126, page 125.

"B. That the deed from Rufus Sanders to John H. Griffin is in ordinary form and after describing the real estate conveyed by metes and bounds the description closes with these words: 'containing 66 acres, more or less, and being the very lot of land conveyed unto Zack F. Gill, as upon reference to his deed duly recorded in the register's office of Wilson County in Book 116, page 354.'

"C. That thereafter, on the same day, Griffin sold the land to the defendant, B. J. Boyles, and executed unto him a deed which contained the following language: 'The assumption of the party of the second part (B. J. Boyles) of a certain mortgage indebtedness outstanding against real estate hereinafter described in the sum of $9,000.00, in favor of Rufus Sanders.' The consideration passing from Boyles to Griffin being $3,000.00, and the assumption of the mortgage.

"D. That almost immediately thereafter, Sanders was notified by Boyles or Griffin of the sale of the property by Griffin to Boyles.

"E. That the note due in ninety days was duly paid and is not in controversy in this action.

"F. That when the second note for $1,500.00 fell due, 5 November, 1921, Sanders called upon Boyles for payment and Boyles did not pay it when due.

"G. That between 5 November, 1921, and 11 February, 1922, Sanders left the note with his attorney, with instructions from Sanders to collect it and that if it was not paid, to sell under mortgage.

"H. That Sanders was subsequently informed by both Boyles and his attorney that the money to take up the note could not be raised by Boyles, except by placing the note with the bank as collateral.

"I. Boyles, not having the money, arranged with Col. John F. Bruton, president of the First National Bank, to borrow $1,500.00, agreeing to put up this note as collateral.

"J. That thereupon, Boyles went to see Sanders' attorney and obtained from him the note in question duly endorsed, 'Rufus Sanders, by his attorney.'

"K. That his attorney knew the purpose for which the note was transferred and acted after consulting Rufus Sanders.

"L. That Mr. Boyles, after receiving the note from Sanders' attorney, carried it to the bank and placed it as collateral to a loan, the proceeds of which he paid to Sanders' attorney for Rufus Sanders.

"M. That Rufus Sanders accepted the proceeds derived from the transfer of said note under circumstances which should have put him upon notice as to the method of its procurement.

"O. That Rufus Sanders has been in possession of said real estate since 18 August, 1923, which real estate is reasonably worth a yearly rental of $360.00.

From the foregoing conclusions of fact, your referee finds the following conclusions of law:

"1. The defendant, John H. Griffin, is entitled to no reduction in the original indebtedness by reason of any discrepancy between the description in the deed of the plaintiff and the acreage actually conveyed.

"2. That The First National Bank of Wilson is entitled to participate in the proceeds of the sale of said real estate.

"3. The plaintiff is chargeable with a yearly rental of $360.00 from 18 August, 1923.

"4. A resale of said real estate must be had."

At November Term, 1925, the court below found: "The findings of fact of the referee as set out in the report of the referee, and a part of the record of this cause, are hereby in all respects affirmed and approved and by the court adopted as the true facts in this cause." Judgment was rendered in accordance with the findings of the referee, etc. The plaintiff duly excepted to the judgment and assigned error. The material assignments of error will be considered in the opinion.

*Connor & Hill for plaintiff.*
*O. G. Rand and W. A. Lucas for defendants.*

CLARKSON, J.—B. J. Boles testified as follows: "I recognize this note. It never came into my possession at all. It came into Col. Bruton's possession at the bank. I assumed the payment of this note. When the note came due money was tight and I told Mr. Sanders I could not pay it. Sanders' attorney called on me several times for the money. I told him that I could not pay it, but would see if I could get Col. Bruton to take it up. I told Sanders' attorney this in Sanders' presence. I was in Sanders' attorney's office right before the transfer. Sanders' attorney called Mr. Sanders' phone number and addressed some person over the phone whom he called Mr. Sanders. (To that portion of the evidence 'Sanders' attorney called Mr. Sanders' phone number and addressed some person over the phone whom he called Mr. Sanders,' the plaintiff excepted and assigned as error.) I don't remember what Sanders' attorney said over the phone, but he told me to get the money from the bank the next day and the note would be transferred. He said that it would be all right. Sanders' attorney and I went to Col. Bruton's office with the note. Col. Bruton gave Sanders' attorney a check for the money. I never gave Sanders' attorney the check. I never had my hands on it."

Plaintiff contends: "The purpose of this evidence was to fix Sanders with notice of the transfer of this note. It will be observed that Mr. Sanders denies any such conversation. 'I never had any conversation

29—191

with my attorney over the phone or otherwise, authorizing him to transfer this note to the bank.' It will be observed that Sanders' attorney does not testify to this telephone conversation. We therefore have a pure hearsay proposition from Mr. Boyles and it is submitted that it is incompetent as fixing Sanders with any conversation with his attorney at all."

Col. John F. Bruton testified, in part: "Mr. Boyles called to see me about negotiating a loan, stating that there was an obligation outstanding on his farm. He stated that the note was worrying him. I told him that we could lend him the $1,500.00 with the Griffin note as collateral. He left the office and in about five minutes returned with the note, which he pledged as collateral. Our records show that he gave plaintiff's attorney a check for the deposit. I told Mr. Boyles that he would have to take the note up and not pay it off if it was to be placed as collateral."

It will be noted that Boyles testified: That he told Sanders he could not pay the note, and in his attorney's presence told him that he would see if he could get Col. Bruton to take it up. He further testified that Sanders' attorney "called Sanders' phone number." This testimony indicated that Boyles knew Sanders' phone number. The attorney addressed some person over the phone whom he called "Mr. Sanders." The note was in possession of Sanders' attorney when he called Sanders' phone number and was subsequently turned over to Col. Bruton as collateral security. The note was never marked "Paid" and the testimony of Col. Bruton was to the effect that the note could not be paid off if he took it as collateral. The money was paid to Sanders' attorney, who did not mark the note "paid." We think, under all the facts and circumstances of this case, the phone incident was some evidence, a circumstance to be considered with the other evidence to fix Sanders with notice that the note was not to be paid off.

Courts of justice recognize the useful intercommunication in modern life of the telephone. They are now installed in almost every home and place of business. They have become a necessity, as a medium to the conduct of business.

A bystander, as was said in *Lumber Co. v. Askew,* 185 N. C., 87, could not go so far as to testify that he heard a conversation "between my father and Mr. Cobb"; because he did not know whether Mr. Cobb was at the other end of the line. This was hearsay. This part of the testimony was incompetent. In that case the principle was well recognized that it is not hearsay for a bystander to testify, under certain circumstances, to what he heard the party who was conversing over the phone say.

In *Atlantic Coast Realty Co. v. Robertson, Exrs.,* 135 Va., 247, 116 S. E., 480, the following was held admissible: "Q. 'What did you see your husband do and hear him say on the Sunday night you have referred to? A. He went to the phone and asked for the Stratford Hotel. He said, in a few moments, "Is that Mr. Burke?" and, in a few moments he said, "I have been trying to get you for several days. I wanted to tell you that I have decided not to accept your proposition," and in a few moments he said "Yes, but I have decided not to accept your proposition." Q. And he repeated that twice over the phone on Sunday night? A. Yes, sir. Q. Are you absolutely positive of that? A. I am.' There have been many cases involving the admissibility of the testimony of a bystander who relates one side of a telephone conversation. No attempt will be made to review these cases. So far as the rule has been formulated, it is that they are governed by the same general rules of evidence which govern the admission of oral statements made in original conversations, except, of course, that the party against whom the conversation is sought to be used must be identified; but the identity of the other party to the conversation may be established either by direct or circumstantial evidence. 12 Ency. Evidence, 477; *Williamson, Etc., v. King,* 58 Okl., 120, 158 Pac., 1142."

In *Johnston v. Fitzhugh,* 91 Oreg. Rep., p. 252, it is said: "If it is established prima facie either directly or by circumstantial evidence that the conversation took place between individuals who could be bound by the same if carried on face to face, it is competent for a bystander to narrate that part of the conversation which he hears, provided always that the statements which he heard are competent evidence. The reason given by the court to the effect that a witness could not give part of the conversation unless he could give all of it, is fallacious. It often happens that a witness can remember some part of the transaction and not others, but this does not exclude what he knows or remembers. It is true that 'when part of an act, declaration, conversation or writing is given in evidence by one party, the whole, on the same subject, may be inquired into by the other.' . . . This, however, does not require that the account of the act, declaration or conversation must come entirely from the mouth of any single witness. It is rare in any case that any one witness may be able to testify to all the facts and circumstances involved in the contention. Generally, evidence is made up of 'line upon line, here a little and there a little': Isa. xxviii: 10."

In *St. Paul Fire & Marine Ins. Co. v. McQuaid,* 114 Miss., 430 (75 South, 255), it was said: "As to the law touching conversations over telephones: We think the law is well settled that such conversations are admissible in evidence. The fact that the voice at the telephone is not identified does not render the conversation inadmissible.

The weight to be given such evidence is largely left to the jury, or to the chancellor, when the case is tried without a jury."

In *McCarthy v. Peach,* 186 Mass., 67, 70 N. E., 1029, 1 Ann. Cas., 801, it is said: "The only question is whether a witness for the plaintiff properly was allowed to testify to what he heard the plaintiff say as a part of an alleged conversation with the defendant over the telephone, the plaintiff being in Boston and the defendant in Chelsea, and the witness being in the presence and hearing of the plaintiff. The witness had no personal knowledge with whom the plaintiff was talking, and did not hear anything that was alleged to have been said by the defendant, and did not know that the defendant heard anything that the plaintiff said. . . . We think that the evidence was properly admitted. . . . The evidence that was admitted cannot be regarded as hearsay evidence or declarations made by the plaintiff in his own interest, simply because the witness did not know of his own knowledge that the other party to the alleged conversation was the defendant, or that there was any other party, or that the defendant heard what was said."

The present case is not like *Saleeby v. Brown,* 190 N. C., p. 146, cited by plaintiff. In the *Saleeby case,* it was said: "The mortgage was not canceled of record, but it was surrendered to the mortgagor and marked 'paid and satisfied', and the note also surrendered to mortgagor and 'canceled and destroyed.' " It could not be subsequently resuscitated and reissued as security for a new loan.

It is true in the present case, that Boyles assumed the payment of the Griffin notes and became liable to pay the plaintiff. In *Parlier v. Miller,* 186 N. C., 504, it is said: "Professor Minor, in his great treatise on Real Property, says: 'If the assignee (of the land) does thus assume payment of the mortgage debt, he thereby becomes the principal debtor, and the original mortgagor is only liable subsidiarily as a surety. And while the mortgagee may continue to hold the mortgagor personally liable upon his contract to pay the debt, notwithstanding the assumption of the mortgage by the purchaser of the land, he may also, it seems, hold the purchaser directly responsible, though he is not a party to the agreement between the mortgagor and the purchaser—a right based sometimes upon the principle that one may sue upon a contract to which he is not a party, if it be made for his benefit, and sometimes upon the theory of the subrogation of the mortgagee to the rights of the mortgagor (the surety) against the purchaser (the principal debtor).' 1 Minor on Real Property, sec. 647; *Baber v. Hanie,* 163 N. C., 588."

Boyles assumed the Griffin notes, secured by mortgage, and became obligated to pay them. The note in controversy, secured by mortgage,

was one of a series that he assumed. It is found as a fact that, to the knowledge of the owner of the note, the money on the note could not be raised by Boyles unless this note be placed as collateral with the bank which was to loan the money. The note was used as a basis of credit for Boyles, with the owner's knowledge and not marked 'paid.' The money was loaned by the bank on the faith of it being one of a series of notes secured by mortgage. The money obtained from the bank was paid to the plaintiff, owner. Under the findings of fact, the intent of the parties was that the note should be used as collateral and not paid, and this, in many respects, is corroborated by the conduct of the parties to the transaction. The right and justice of the matter, under such circumstances, is that the bank should not be the loser. The agreement should stand as made by the parties. *Furniture Co. v. Potter,* 188 N. C., p. 146.

The evidence of record is sufficient to sustain the findings of fact.

It is said in *Battle v. Mercer,* 187 N. C., p. 448: The discretion of a trial judge as to findings of fact is well stated by *Stacy, J.,* in *S. v. Jackson,* 183 N. C., 698: 'The findings of fact of a referee, approved by the trial judge, are not subject to review on appeal, if they are supported by any competent evidence. *Dorsey v. Mining Co.,* 177 N. C., 60; *Hudson v. Morton,* 162 N. C., 6; *Hunter v. Kelly,* 92 N. C., 285.' "

We do not think it necessary, from the view we take, to consider the other assignments of error *seriatim.* From the record we can find

No error.