## TAKAHASHI v. HECHT CO.
### No. 5660.

Court of Appeals of the District of Columbia.
Argued Feb. 16, 1933.
Decided April 3, 1933.

W. Gwynn Gardiner, of Washington, D. C., for appellant.

Morris Simon, Lawrence Koenigsberger, Eugene Young, and Selig C. Brez, all of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

ROBB, Associate Justice.

Appeal from a judgment for the defendant (appellee here) upon a directed verdict in an action to recover damages for false arrest and imprisonment.

A similar judgment was entered at a previous trial of the case, and an appeal taken to this court which resulted in reversal. The law applicable to the case was comprehensively and lucidly stated in an opinion by Mr. Justice Groner, for the court. Takahashi v. Hecht Co., 60 App. D. C. 176, 50 F. (2d) 326, 59 W. L. R. 452. It was held that the trial court erred in excluding statements of a police officer made after consultation with defendant's general manager; that the store detective's declaration to the police officer that the complaint against the employee for stealing a customer's ring was being made by the customer, and not by the store, was not conclusive; that such declaration did not prevent the employee suing for false arrest and false imprisonment from showing by other evidence that her arrest was in fact procured at the direction of the store's responsible agent within the scope of his employment; and that relevant statements or admissions of the corporation's agent within the scope of the agent's authority are admissible against the corporation, particularly where they explain the acts of the corporation out of which the injury complained of arose.

At the second trial the plaintiff, Rosa Takahashi, testified that in May 1927, she was employed as a manicurist in a department of defendant's store in Washington. On the day of her arrest, in the ordinary performance of her duty, she waited on a woman customer, and shortly thereafter the customer claimed to have lost a ring. A store detective was summoned and interviewed plaintiff, who denied any knowledge of the disappearance of the ring. The detective told plaintiff not to leave the room until his return, and he then left the room. Thereupon a Mrs. Stewart, manager of the beauty shop department, and plaintiff's immediate superior, after interviewing plaintiff, said: "I knew you did not take the ring." Mrs. Stewart then went downstairs to the office. Upon her return she directed plaintiff to go downstairs to the general manager's office; that the general manager wanted to talk to her personally; wanted her to tell all about what happened to the young lady customer. Plaintiff went down to the office and the house detective went with her. Instead of talking with the general manager, as she had

anticipated, she talked with a police detective by the name of O'Dea. After listening to her story, O'Dea said: "Well, I know you didn't take the ring. Wait a minute; I go in the next room and talk to the general manager." "He went in there for a few minutes. I don't know just how long, but quite a few minutes. He left me with Miss Meyers (the customer) and Mr. Cole, who was also a detective."

When O'Dea came out of the general manager's room, he was accompanied by a young lady from the general manager's office. Witness did not know her name. O'Dea directed that she get her hat and coat; that he wanted to take her down and let his boss talk with her. Witness told him she would not go until she had seen Mrs. Stewart; "so I then went upstairs, and this young lady from the general manager's office went with me and so did Detective Cole. I told Mrs. Stewart that I had to go down town and talk to Mr. O'Dea's boss. She told me to get dressed before I went. So, Mrs. Stewart and the young lady from the general manager's office went inside the dressing room while I changed my clothes. The young lady from the general manager's office, Detective Cole, and I went downstairs, and Mr. O'Dea was at the employees' entrance with Miss Meyers." Plaintiff was taken to police headquarters and subjected to indecent and outrageous treatment in an effort to find the ring on her person. We learn from the prior opinion that the ring was found by the customer in her own clothes. After plaintiff had been searched (by a policewoman), O'Dea said to her: *"Now I am through with you; I know you did not take the ring. I am going to call up Hecht."* "So he went to the telephone and left the door opened; I knew he called Hecht's number and he asked for the general manager, and so he talked—." Upon objection of the defendant, the court excluded the conversation that ensued. Plaintiff was then locked up until the next day at noon, when she was discharged by O'Dea.

Mrs. Stewart, the beauty department manager, a disinterested and intelligent witness, testified that she was at luncheon when the alleged loss of the ring occurred. After talking with plaintiff, she saw Mr. Evans, the house detective, who finally asked her what she thought about it. Mrs. Stewart replied that she did not think Rosa took the ring and Evans "said he didn't either." In perhaps half an hour or less, the store superintendent (Mr. Marlow, whom the plaintiff designated as general manager) came in and asked witness what she thought about the matter, and whether she thought that they should have Rosa arrested. Witness said, "No; Rosa did not take the ring." "Mr. Marlow said he did not think so either. * * * Mr. Marlow suggested that he and I go to Mr. Levy's office. Mr. Levy was the general manager of the store. + * * Mr. Levy's office was on the top floor. We went to Mr. Levy's office, and Mr. Marlow opened the conversation by saying that a customer of the beauty shop had lost a ring and thought one of the employees of the beauty shop had taken it, and Mr. Levy said, 'Have the girl arrested.' Mr. Marlow remonstrated with Mr. Levy and said that was not the wise nor proper thing to do. After talking with him a while, Mr. Levy said, 'But we must protect our customers,' and Mr. Marlow explained to Mr. Levy that by having the girl arrested it would get the store into trouble. Mr. Levy still said we should have to help the customers, so it was agreed that Mr. Marlow was to go back to the dressing department, or to the customer, who was then just outside of the hair-dressing department, and offer the store's regrets and assistance, and let the customer, if she wished, to make a complaint, and if she did, to offer the assistance of the store's detective going to the police station with the customer to enter a complaint, but it was understood that the store technically would not file a complaint." Witness then returned to her work. About an hour later O'Dea and a gray-haired man came into witness's department and made a further search. *Mr. Marlow's secretary was with them.* Thereupon "they told me to ask Rosa to get her street clothes on, and they asked me to go back to the dressing room and watch her until she changed her clothes."

Under cross-examination the witness insisted that when she and Mr. Marlow were in Mr. Levy's office he had said, "Well, then, have the girl arrested"; that he did not say, "Well, then, send for a detective"; that the talk was from the standpoint of the customer. "The operator was not under discussion; whether she did or did not take the ring was not under discussion."

Plaintiff called as a witness Detective O'Dea, who was connected with police headquarters. He testified that on the 18th of May, 1927, Evans, detective at the Hecht Company, and a customer of that company appeared at headquarters. He was asked if he talked with Evans, and replied, "No; Mr. Evans says, 'Here is a lady who is going to make a report and we have nothing to do with it. She wants to report a ring stolen'"; that after talking with them he went to the Hecht Company. Asked whether he

saw Evans when he got back to the store, he answered in the affirmative. "When I got up there (to the store), I got off the elevator to see Mr. Marlow, Mr. Evans, and Miss Meyers, and he walked over to them and I said, 'Mr. Marlow, this lady reports losing a ring here.' " Witness was then asked whether on the former trial he did not testify that he had a conversation with Evans and Marlow when he got back to the Hecht Company, and he admitted that he did. On cross-examination O'Dea was asked what Marlow said to him at that time, and answered, "I told Mr. Marlow that Miss Meyers lost a ring in his store and accuses one of his girls of taking it, and he merely said, 'Well, it is a matter for you; we have nothing to do with it.' I believe then he walked away or he might have stayed there. I put it up to Mr. Marlow—'This woman says she lost her ring, and she suspicions one of these girls in here,' and he said, Mr. Marlow said, 'It is up to you; we have nothing to do with it; it is between you and this woman.' "

Thereupon plaintiff rested. The court, expressing the view that plaintiff had failed to show that O'Dea, before arresting plaintiff, had talked with the general manager or Mr. Marlow, directed the jury to return a verdict for the defendant.

The ruling of the trial court involved a misapprehension of our opinion on the former appeal.

 The alleged telephone conversation by O'Dea with the representative of the Hecht Company following the search of plaintiff was admissible under the prior ruling of this court. The admissibility of testimony of a bystander who relates one side of a telephone conversation is governed by the same general rules of evidence which govern the admission of oral statements made in ordinary conversation. Sanders v. Griffin, 191 N. C. 447, 451, 132 S. E. 157. Where it is established either directly or by circumstantial evidence that a telephone conversation took place between individuals who could be bound if the same had been carried on face to face, it is competent for a bystander to relate that part of the conversation which he heard, provided such statements are competent evidence. Johnston v. Fitzhugh, 91 Or. 247, 252, 178 P. 230; Sawyer v. Eaton (C. C. A.) 293 F. 898; A. C. R. Co. v. Robertson's Ex'r, 135 Va. 247, 261, 116 S. E. 476; Jamaica Pond Garage v. Woodside Motor Livery, 236 Mass. 541, 128 N. E. 881; McCarthy v. Peach, 186 Mass. 67, 70 N. E. 1029, 1 Ann. Cas. 801.

We are clearly of the view that there was substantial evidence tending to show that the general manager, Levy, and the store superintendent, Marlow, representing the defendant, either commanded the arrest or instigated the police officer to make it. The mere declaration of defendant's agent to the police officer that "we have nothing to do with it (the arrest)" is not conclusive. The jury should have been permitted to say whether that declaration was made in good faith or whether it was merely a subterfuge.

Having offered substantial evidence to the effect that plaintiff's arrest and imprisonment were directly or indirectly at the procurement of the defendant and without probable cause, the burden was then on the defendant to meet that evidence. It was error for the court to direct a verdict for the defendant.

Judgment reversed, with costs, and the cause remanded for a new trial.

Reversed and remanded.