258 So.2d 572 (1972)
Mildred E. WILSON
v.
Antonio VIRGADEMO et al.
No. 4802.
Court of Appeal of Louisiana, Fourth Circuit.
February 7, 1972.
*574 Windhorst, Heisler, De Laup & Wysocki, Frederick P. Heisler, Darryl J. Carimi, New Orleans, for plaintiff-appellee.
Jones, Walker, Waechter, Poitevent, Carrere & Denegre, Donald O. Collins, New Orleans, for defendants-appellants.
Before SAMUEL, GULOTTA and STOULIG, JJ.
STOULIG, Judge.
This suit is brought by Mildred E. Wilson, who seeks damages for injuries sustained when she fell off of allegedly defective steps leading to the front entrance of the home she rented at 2040 Cleveland Avenue in the City of New Orleans. The premises were rented by plaintiff on a monthly basis from Antonio Virgademo, owner-lessor of the property. Virgademo, his wife, Mrs. Antonio Virgademo, and his insurer, Travelers Insurance Company, are made codefendants in this suit.
After trial of the matter in the district court, a jury award of $12,500 was rendered in favor of Mrs. Wilson against defendants, who have appealed, alleging that, among other reasons, the judgment is in error in the following respects:
1. In failing to find the plaintiff guilty of contributory negligence;
2. In allowing certain hearsay evidence into the record over the objection of counsel for defendants; and
3. In making prejudicial statements about the testimony of the plaintiff in the presence of the jury.
Before examining these contentions we will briefly relate the facts surrounding the incident. It appears from the testimony adduced upon trial that the accident occurred in the following manner: On the morning of January 7, 1969, Mrs. Wilson emerged from the front entrance of her "shotgun" duplex apartment with a small pot of soup she intended to take to a neighbor. She stepped onto the top riser of four cement steps which abutted the sidewalk and placed the soup down in order to close the door to the apartment. While turning to descend before picking up the pot of soup, the step on which she was standing tilted, throwing her off balance and causing her to fall on the sidewalk. Mrs. Wilson sustained serious injuries consisting of a fracture of the neck of the femur of the right leg. The fracture required an open reduction with fixation by orthopedic nails.
From the outset we should state that we see no error in the jury's conclusion that the steps were in a defective condition and that the defendant was guilty of negligence. Mrs. Wilson testified that the steps had been in a defective condition since the time she moved to the address. Specifically, she stated the top step and at least one other step rocked or wobbled back and forth toward the sidewalk. Her testimony of this is supported by that of Clarence Vidrine, who lived with his wife and family in the other half of the premises. Vidrine stated that it was unsteady and that if one did not watch his balance he would fall back. In fact, Mrs. Wilson had fallen once before due to the wobbly condition of the steps and had suffered a gash of her head, requiring 21 stitches. No suit was filed as a result of this accident, but Mrs. Wilson testified that after its occurrence she had requested Mrs. Virgademo to repair the steps and install a handrail, neither of which was ever done.
Even without a charge of negligence, however, a landlord may be held liable to his tenant for injuries caused by defects in the premises. The basis for such liability is set forth in LSA-C.C. art. 2695, which reads as follows:
"The lessor guarantees the lessee against all the vices and defects of the thing, which may prevent its being used even in case it should appear he knew nothing of the existence of such vices and defects, at the time the lease was made, and even if they have arisen since, provided they do not arise from the fault of the lessee; and if any loss should result *575 to the lessee from the vices and defects, the lessor shall be bound to indemnify him for the same."
See also LSA-C.C. arts. 670, 2322, 2692 and 2693.
It is beyond dispute that LSA-C.C. art. 2695 places upon the landlord the primary obligation of keeping his premises in repair and that he is liable for injuries due to accidents resulting from defects which can be reasonably expected to cause injury to persons using ordinary care. Anslem v. Travelers Insurance Company, 192 So.2d 599 (La.App. 3d Cir. 1966). Furthermore, it is well-settled that this liability of the landlord attaches whether or not he had actual knowledge of the defective condition of the premises. Boutte v. New Orleans Terminal Co., 139 La. 945, 72 So. 513 (1916); Thompson v. Moran, 19 La.App. 343, 140 So. 291 (Orl.1932). The condition of the steps in the instant case is clearly the type of defect that is contemplated by LSA-C.C. art. 2695.
However, counsel, for defendant argues that Mrs. Wilson's fall was due to her contributory negligence which should bar recovery for her injuries. Specifically, he argues that Mrs. Wilson's testimony indicates she was fully aware of the alleged defective condition of the steps and that, particularly in light of her prior accident and infirm physical condition, her continued use of them constitutes contributory negligence.
A review of the jurisprudence of the appellate courts of Louisiana on this issue indicates a generally accepted rule which we find best stated in the case of Redd v. Sokoloski, 2 So.2d 266, 268 (La.App. 2d Cir. 1941):
"* * * [W]e understand the rule to be that where a tenant has knowledge of the generally defective condition of a portion of the rented premises, but it reasonably appears that he might safely use it with the exercise of care, his use in such manner does not constitute contributory negligence that would bar his recovery in an action for damages resulting from the defects. If, however, he was aware of the defect causing the injury and it was such as to indicate to a reasonable-minded person that use of the defective portion was apparently and imminently dangerous, recovery is not permitted."
See also Gilliam v. Lumbermen's Mutual Casualty Co., 240 La. 697, 124 So.2d 913 (1960); Anslem v. Travelers Insurance Company, supra; Turner v. Aetna Casualty & Surety Co., 175 So.2d 304 (La.App. 2d Cir. 1965); Hill v. Travelers Insurance Company, 128 So.2d 277 (La.App. 1st Cir. 1961); Murray v. Patton, 118 So.2d 704 (La.App.Orl.1960); Estes v. Aetna Casualty & Surety Co., 157 So. 395 (La.App.Orl. 1934); Labrt v. Gaerthner Realty Co., 146 So. 69 (La.App.Orl.1933).
An application of the facts of this case to the above-quoted rule leads us to the conclusion that Mrs. Wilson's continued use of the steps despite her knowledge of their condition was not so unreasonable as to bar her recovery in this action for damages. While the defect was admittedly obvious we do not find it was so "apparently and imminently dangerous" that she might not safely use it with the exercise of care. Nor does the fact that this accident occurred ipso facto render her use of the steps unreasonable under the circumstances. Were this the case the rule would be rendered totally meaningless. This is clearly seen in the much-cited case of Boutte v. New Orleans Terminal Co., supra, wherein the Louisiana Supreme Court stated:
"* * * To assume that the lessee, in this case, knew that the balcony was so rotten that it could not withstand her weight would be to assume that she committed suicide. All that could be assumed in that respect would be that she knew or ought to have known that the balcony was unsafe. The evidence, however, does not justify our concluding that the danger was so apparent as to do away with the *576 provisions of article 2695 of the Civil Code, whereby the lessor was bound to guarantee the lessee against all vices and defects in the leased premises and to indemnify her for any loss resulting therefrom." 72 So. at 516.
The court, in Estes v. Aetna Casualty & Surety Co., supra, in dealing with a situation similar to that under consideration cited a hypothetical case from the American Law Institute's Restatement of the Law which we find apposite to the issue at hand and quote herein:
"`A leases an apartment in an apartment house to B. A step upon the common stairway by which the apartment of B as well as that of other tenants is reached, is to the knowledge of B and his family in bad condition but not in such a dangerous condition that a reasonable man would regard it as foolhardy to use the stairway. C, the wife of B, while ascending the stairway and exercising reasonable care to avoid harm from the defective step, slips upon it and is hurt. A is liable to C.'" American Law Institute's Restatement of the Law, vol. 2, c. 13, § 360, p. 977, as quoted in Estes v. Aetna Casualty & Surety Co., supra, 157 So. at 402.
Although we do not consider it crucial to the conclusion we have reached, we note Mrs. Wilson's testimony that the back steps to the house (the only other entrance) were in a rotten and dilapidated state, thus pretermitting any argument that there was a safe alternative route which she could have taken.
We find no evidence, testimonial or otherwise, which would indicate that Mrs. Wilson failed to exercise reasonable care in her attempt to descend the steps. Counsel for defendant suggests that Mrs. Wilson did not act as a "reasonable prudent person" in that she attempted to utilize the steps while aware of a physical condition which would prevent her from properly doing so. While counsel did establish upon trial of the matter that the plaintiff had suffered three heart attacks in the past, that she suffered from a condition known as Dupuytren's contraction of both hands and that she was a diabetic who had not taken her daily insulin treatment for five weeks, he failed to establish any of these conditions as a contributing cause of her accident in other than a purely speculative way. The suggestion that Mrs. Wilson's hand disease had caused her to lose a great deal of mobility and the use of hands in her balance, thus implying this as a cause for her fall, is sheer conjecture at best. And the most that could be elicited from the witnesses in the way of medical testimony regarding her diabetic condition is that she would or could be subject to blackout spells and dizziness. In opposition to this is the testimony of plaintiff that the sole cause of the accident was the wobbly step which caused her to lose her balance and fall.
It is axiomatic that one who raises a special defense must prove it by a preponderance of the evidence. Defendant has clearly failed to bear the burden of proving contributory negligence on the part of Mrs. Wilson.
We turn now to the defendant's charge that the court erred in making prejudicial statements concerning testimony of the plaintiff in the presence of the jury. He argues that the trial judge committed reversible error in commenting favorably on the veracity of the plaintiff's testimony. The allegedly prejudicial statements made at different points in the examination of one of the medical witnesses read in their context as follows:
1. "BY MR. COLLINS:
My objection, Your Honor, is that this is not the entire record of this lady. All this is a portion of the lady's record pertaining to services performed
"BY MR. CARIMI:
Your Honor, we will so stipulate.
"BY THE COURT:
Let the record reflect that this record is a record produced by plaintiff, pertaining *577 to the injury in question, i. e., the alleged hip injury that she is presenting to the jury, her claim for the hip injury. This is the record.
The Court is going to allow this record in with the notation in the record that everyone has been telling the truth up here, and the lady had other treatment at Charity and those records are there. All right." Transcript at 103-04.
2. "BY MR. CARIMI:
Your Honor, I object to the insinuation by the question. There is no other evidence in this case of this factor being important. This is just mere speculation as to the general nature of what happens to some diabetics from the general practice of medicine.
I don't think that it is pertinent to this lawsuit.
"BY THE COURT:
The objection is overruled. We have the lady's entire physical condition before us. She's been truthful about that diabetes, and she has said that she fell off of the stairs. Leave it all hang out. They are going to decide about it." Transcript at 116-17.
We have carefully read the record of the proceedings in this case with particular regard to these comments, and have determined that, understood in the context in which they were made, they were neither improper nor prejudicial. The first comment, "that everyone has been telling the truth up here," had reference to the fact that Mrs. Wilson had not made any denials concerning her diabetic condition and, accordingly, the trial judge would permit the introduction of the Charity Hospital records which contained only information relative to treatment for her hip injury. It was clearly not calculated to influence the jury and, in the opinion of this court, was not prejudicial to defendant's case.
The second comment was made by the trial judge in overruling the objection of attorney for plaintiff that the questioning regarding the tendency of one with diabetes to "black out" was improper. He merely reiterated that Mrs. Wilson had admitted her diabetic condition and stated "she has said she fell off the stairs," not that she told the truth regarding the circumstances of the fall. The comment which followed, that "they are going to decide about it," clearly implies that the court meant it would be the jury's decision and refutes any suggestion of impropriety or prejudice on his part.
We additionally note that this issue was raised for the first time by appellant on review, as no objection had been voiced by him at the time the remarks were made by the trial judge. As a general rule, objections regarding the remarks and conduct of the judge may not be made for the first time in the appellate court. 4 C.J.S. Appeal and Error § 288. The reason for this rule is basic: A timely objection directs the court's attention to the possible prejudicial effects of the remarks and affords it the opportunity to limit the import of the comments in the minds of the jury. By failing to object at the time the remarks are made a party waives his right to later claim prejudice.
Appellant seeks exception to the rule by asserting that the voicing of an objection would have been a vain and useless act in that the trial judge was powerless to counteract the import of his favorable comments on the credibility of the plaintiff and an objection would have only emphasized their improper effect. In light of our above-stated views regarding the effect of the comments we find this argument unconvincing. Furthermore, we are of the opinion that had appellant felt the statements were so prejudicial that their effect could not be remedied, he should have moved for a mistrial. Having failed to do so, he may not now seek redress before this appellate tribunal. Thus, we find ourselves in complete accord with the recent First Circuit Court of Appeal case of Johnson v. H. W. Parson Motors, Inc., 231 So.2d 73 *578 (1970), in which the court, dealing with a similar situation, stated:
"* * * We also note that no effort was made by counsel for appellants either at that stage of the trial or in conjunction with the trial court's charging of the jury to bring this matter to the attention of the trial court so that the jury could be expressly admonished to disregard the comment. We feel counsel for appellants should have made his objection before the trial court or if he felt the statement so prejudicial, he should have moved for a mistrial; instead, counsel for appellants was willing to permit the jury to consider the case and only after appellants have received an unfavorable verdict and judgment is this error urged as a basis for reversal and a new trial. We feel under the circumstances appellants waived the objection and cannot now be heard to complain, cf. Louisiana Code of Civil Procedure, Article 1793; Housing Authority of New Orleans v. Gondolfo, 208 La. 1065, 24 So.2d 78 (1945); Bertoli v. Flabiano, 116 So.2d 76 (La.App. 1st Cir. 1959)." 231 So.2d at 78, 79.
Counsel for defendant argues, finally, that the court committed reversible error in allowing Clarence Vidrine to testify that he heard his wife make a telephone request of Mrs. Virgademo, codefendant, to fix their front steps to the duplex they shared with Mrs. Wilson. Appellant argues that the comments were hearsay. We do not agree. Mr. Vidrine was entirely qualified to state what was within his own knowledge, i. e., the request which he actually heard his wife make. Wigmore on Evidence states in Vol. II § 669 at page 790:
"* * * a bystander, listening to A's conversation with B at the telephone, is qualified to report A's utterances heard by him, but in strictness is not qualified to report B's utterances as repeated or alluded to by A during the conversation. Nevertheless, the strict application of the requirement of personal knowledge is here out of place, and leads to unpractical quibbles."
And in Takahashi v. Hecht Co., 62 U.S.App. D.C. 72, 64 F.2d 710, 712 (1933), the court stated in discussing this issue:
"* * * The admissibility of testimony of a bystander who relates one side of a telephone conversation is governed by the same general rules of evidence which govern the admission of oral statements made in ordinary conversation. Sanders v. Griffin, 191 N.C. 447, 451, 132 S.E. 157. Where it is established either directly or by circumstantial evidence that a telephone conversation took place between individuals who could be bound if the same had been carried on face to face, it is competent for a bystander to relate that part of the conversation which he heard, provided such statements are competent evidence. * * *"
It may have been validly argued that the proper foundation for the question had not been laid, i. e., that it was never established that Mrs. Vidrine was actually speaking with Mrs. Virgademo. However, this objection was not raised. In any event, we do not find that the disputed testimony was crucial to the plaintiff's case or that its submission to the jury constituted reversible error. It merely confirmed that Mrs. Virgademo had prior knowledge of defects in the house. Furthermore, as has been shown from our discussion of LSA-C.C. art. 2695 and the relevant jurisprudence such prior knowledge on the part of the landlord of the existent defect is not necessary for liability to attach.
For the foregoing reasons the judgment of the district court is affirmed, costs to be borne by appellant.
Affirmed.