285 So.2d 354 (1973)
Linda M. REVON
v.
AMERICAN GUARANTEE & LIABILITY INSURANCE COMPANY.
No. 5385.
Court of Appeal of Louisiana, Fourth Circuit.
November 2, 1973.
Rehearing Denied November 30, 1973.
Writ Granted January 25, 1974.
*355 Frank J. D'Amico, New Orleans, for plaintiff-appellee.
Montgomery, Barnett, Brown & Read, Wood Brown, III, New Orleans, for defendant-appellant.
*356 Before SAMUEL, STOULIG, and SCHOTT, JJ.
STOULIG, Judge.
Plaintiff, Linda Revon, a tenant, was awarded $35,000 by a jury for a back injury she sustained in a slip and fall accident at the Wood Oak Apartments. She alleged she slipped on a wet iron stairway as she was descending from her third floor apartment to the swimming pool in the patio and the wet surface, combined with an unsafe design, created a vice or defect in the premises that was the proximate cause of her injury. The landlord's insurer, American Guarantee & Liability Insurance Company, named defendant, answered with a general denial. In the alternative, it pleaded her contributory negligence barred her recovery. From a judgment adopting the jury verdict the defendant has appealed.
We preface our discussion of defendant's specification of errors with a summarization of the evidence. Plaintiff testified she moved into this apartment complex on April 1, 1970. It contains 42 units on the second and third levels with the ground floor reserved for parking. There are two rows of apartments facing each other and divided by a central patio which contains a swimming pool. The tenants are provided with access to the apartments by an elevator and two sets of stairs (one leading from the parking area and the other from the swimming pool).
On June 18, 1970, plaintiff and her friend Melinda Richy were descending an iron stairway between the third and second levels, intending to go to the swimming pool. She testified the steps at that time were wet and slippery because of their use by other tenants and guests returning from the pool to their apartments. Before she reached the second floor, she said, "* * * all of a sudden my feet just gave way and went up, and I fell on my back * * *." Her friend assisted her back to her own apartment.
Plaintiff explained she did not use the elevator to descend to the patio because the carpeting in it, often wet by constant use by swimmers, had mildewed and had an offensive odor. She was aware the surface of the iron stairway was slippery when dry, and even more so when wet. Admittedly, she did not check the condition of the other stairway prior to descending and explained "* * * they could be wet too." Before her accident, she was aware of two other instances where tenants had slipped on these steps. She said she reported the slippery condition to a lady she assumed was the wife of the manager of the apartment complex.[1]
Three witnesses were called by the plaintiff who corroborated the iron steps were usually wet and slipperyher roommate and two girls who visited often. All three confirmed the elevator's strong offensive odor discouraged its use. In addition, the roommate testified a janitor hosed down the iron steps every afternoon.
The only expert called as a witness expressed the opinion that the steps were slippery. He was a contractor who had built more than a dozen similar apartment complexes. He visited the accident site on two separate occasions and described the stairway on which plaintiff fell as being composed of corrugated iron treads and noted worn areas in the middle. This expert testified the steps should have been covered either with rubber matting or a mastic substance to eliminate the dangerous slippery condition.
In rebuttal the defendant called only one witnessRobert Martin, the apartment managerwho (1) confirmed the elevator was odoriferous; (2) denied receiving complaints relative to slippery stairways prior to plaintiff's accident; and (3) stated *357 he did not know whether or not the porter hosed the stairs every afternoon.
On appeal defendant contends these facts are insufficient to establish the landlord's liability. In this connection, it is argued the trial court improperly charged the jury by stating the existence of a defect in the premises was sufficient to establish a prima facie case against the landlord. As we review the jury charge we agree the principle of liability expounded is based on LSA-C.C. art. 2695:
"The lessor guarantees the lessee against all the vices and defects of the thing, which may prevent its being used even in case it should appear he knew nothing of the existence of such vices and defects, at the time the lease was made, and even if they have arisen since, provided they do not arise from the fault of the lessee; and if any loss should result to the lessee from the vices and defects, the lessor shall be bound to indemnify him for the same."
Before this rule of strict liability may be imposed, defendant argues, the tenant must prove the defect was substantial and manifested itself through a collapse of a part of the original structure. But where the vice or defect is in the design of the structure itself, defendant contends, then plaintiff must affirmatively prove negligence.
We do not agree. The cases cited to support this proposition do indicate that LSA-C.C. arts. 670 and 2322[2] are limited to instances of collapse and breakage; however, the application of Article 2695 is not qualified in any manner whether the defect is one resulting from faulty design or failure to repair. The strict liability outlined in Article 2695 has been applied in instances where the design of the structure is inherently dangerous[3] as well as in situations where a part of the structure has given way.[4]
Accordingly, we find no error in the trial court's jury charge quoad what constituted liability on the part of the landlord. We turn now to a consideration of whether the stairway upon which plaintiff fell did in fact contain a vice or defect in design.
It should be noted that one of the features of this apartment complex designed to attract tenants was the availability of a swimming pool on the premises. Presumably the landlord expected the tenants of the 42 apartments and their guests to use the pool. We think he reasonably should have anticipated that the passageways and stairways between the pool and the apartments would be wet most of the time because of their use by people who left the pool area after swimming. Thus, in this given situation, a stairway that was slippery when it was dry and even more slippery when it was wet constituted a built-in hazard. This vice in design is substantial and amply supported by the record. Further, there is no doubt that plaintiff's injury was proximately caused by the slippery condition.
Finding no error in the trial judge's jury charge on liability and having concluded plaintiff established her accident occurred because of a vice in design, we turn to defendant's attempt to exculpate itself from liability on a plea of contributory negligence.
It is conceded plaintiff was aware the steps were slippery prior to her accident. Whether her use thereof despite this knowledge constitutes contributory negligence is contingent upon the hazardous condition as it existed at the time. If it should have been apparent the use of the *358 stairway would probably result in an accident, then her negligence contributed to its occurrence. Or, to put it another way, if she should have been aware of imminent danger but acted in a foolhardy manner in using this stairway despite her reasonable apprehension, then she should not recover. However, if she reasonably thought she could descend safely by the exercise of due care, despite the slippery condition, her use thereof did not constitute contributory negligence. See Wilson v. Virgademo, 258 So.2d 572 (La.App. 4th Cir. 1972), wherein the rule of contributory negligence as a defense to an Article 2695 situation is discussed at length. In the case before us, we think the plaintiff, based upon her previous use under similar circumstances without incident, had every reason to believe she could safely descend the stairway by exercising due care and, therefore, we reject the plea of contributory negligence.
Defendant further urged plaintiff was contributorily negligent in failing to use either the elevator or the other stairway to go to the pool. The reason the elevator was not used was because of its strong odor. As to the other stairway, we have no evidence before us to establish whether or not it was in a safe condition at the time of the accident. It is axiomatic that before we will consider if plaintiff's failure to use a safer stairway constituted contributory negligence, it must first be established as a fact that the other stairway was reasonably accessible and free of any hazardous condition. Defendant, who pleaded the affirmative defense of contributory negligence, bore this burden and failed to carry it. Thus there is no factual basis from which we can determine that the plaintiff's failure to use another stairway was an unreasonable or imprudent act sufficient to constitute contributory negligence. We do not imply that under normal circumstances, had the other steps been available and safer, that the plaintiff's failure to use them would constitute contributory negligence. As is well established in the jurisprudence, the criterion is not which of the means of egress is more safe, but rather, whether the use of the hazardous appurtenance is an imprudent or unreasonable act.
Finally, defendant contends the quantum awarded should be reduced in the event we do not reverse on liability. Her previously alluded-to back injury was originally diagnosed as "multiple transverse process fractures, L2, 3, and 4 on the left; L3 and 4 on the right" and a "probable herniated nucleus pulposus, L4-5 on the left." On June 29, 1970, because of severe pain and discomfort, plaintiff was hospitalized, complete bed rest was prescribed, and she was placed in traction for six days. After her discharge from the hospital on July 8, 1970, she was treated on an outpatient basis by Dr. James Weilbacher, an orthopedic surgeon. On July 28 she was again admitted to the hospital where a myelogram was made, and on August 4, 1970, a partial hemilaminectomy between L4 and L5 on the left side was performed during which a herniated disc was found on that side. Subsequently, she was discharged from the hospital on August 12, 1970, and from further medical treatment on November 18, 1970.
After the accident she was unable to work for seven months. Prior to her injury, plaintiff was employed as a barmaid and worked from five to seven days per week. And upon her return, because of her disability, she was able to work only three days a week.
During her recuperation period, Miss Revon wore a back brace for approximately six months. Further, at the time of trial she testified that her activities were restricted because of her back condition.
Proven special damages include $2,521.21 in medical and $2,700 loss of income during her seven-month period of total incapacity. The medical evidence does not project for what period Miss Revon will be restricted to part-time employment; however, based on the information available and assuming her back will continue to improve as time goes on, and since there is no evidence of permanent disability, we project her loss of future wages to be $2,500. Her specials thus total $7,721.21.
*359 Based on these computations, the general damages awarded for pain and suffering and residual disability is in excess of $27,000. Our review of the jurisprudence as a guide to determine whether there was an abuse of discretion by the jury in fixing quantum reflects the award is excessive. Accordingly we reduce the amount of general damages to $14,000. See Kennedy v. Travelers Insurance Company, 277 So.2d 692 (La.App. 2d Cir. 1973); Cavalier v. City of New Orleans, 273 So.2d 303 (La.App. 4th Cir. 1973); Inabinet v. State Farm Mutual Automobile Ins. Co., 234 So.2d 827 (La.App. 1st Cir. 1970); Johnson v. Crescent Arms Apartments, Inc., 221 So.2d 633 (La.App. 4th Cir. 1969), and Addison v. Traders and General Insurance Company, 212 So.2d 754 (La. App. 3d Cir. 1968).
For the reasons assigned, the judgment appealed from is amended to reduce the judgment in favor of the plaintiff from $35,000 to $21,721.21, with legal interest from judicial demand; in all other respects the judgment appealed from is affirmed. Plaintiff is to pay the cost of this appeal.
Amended and affirmed.
NOTES
[1] It developed during the course of the trial that there was a lady who was an assistant manager but was not the wife of the manager; however, the record is not clear if this is the same lady to whom the incidents were reported.
[2] "Every one is bound to keep his buildings in repair, so that neither their fall, nor that of any part of the materials composing them, may injure the neighbors or passengers, under the penalty of all losses and damages, which may result from the neglect of the owner in that respect." Art. 670.

"The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice in its original construction." Art. 2322.
[3] Estes v. Aetna Casualty & Surety Co., 157 So. 395 (La.App.Orl.1934).
[4] Wilson v. Virgademo, 258 So.2d 572 (La. App. 4th Cir. 1972).