SAMUEL, Judge.
Plaintiff filed this $1,337,922.98 suit for personal injuries and property damages allegedly resulting from an automobile collision. Following trial to a jury there was judgment in favor of plaintiff in the sum of $302.18, representing property damages only. Thereafter, plaintiff filed a rule for additur and alternatively for a new trial. The rule was denied. Plaintiff has appealed seeking an award for personal injuries in the sum of $150,000.
Plaintiff is a thirty-five year old police officer. The accident occurred on December 30, 1975. The defendant driver was backing out of a parking space in a bank parking lot and struck plaintiff’s vehicle. The impact was slight. According to plaintiff, he felt nauseous and remained in the car for some time, then went into the bank where someone reported the accident.
According to the defendant driver: He immediately stepped out of the van and asked plaintiff if he was “O.K.”; plaintiff said he was not hurt and went to call the police to report the accident. Shortly thereafter an ambulance and a police car passed the scene (apparently responding to another call) and plaintiff rushed down the street after the vehicles, causing both to return. The ambulance then left because it was not needed and the parties gave their versions of the incident to the police officers investigating the accident. He did not hear plaintiff complain of injury at the time. (However, we note the report indicates plaintiff stated he was injured.)
Thereafter, plaintiff was treated by Dr. Ignatious Tedesco who saw him on about 200 occasions and rendered a bill of $5,300. Dr. Tedesco did not testify. He was under subpoena but possibly because of a medical emergency did not appear. Plaintiff did not request that the case be held open for his testimony.
Medical testimony was given by Dr. Anthony Failla, an ear, nose and throat specialist, Dr. Norman Hunt, a radiologist, and Dr. Jose Garcia Oiler, a brain surgeon. Lay testimony was given by plaintiff, Grace Loyacano, August Werner (plaintiff’s brother), and Steven London, plaintiff’s roommate for two years (from April 3, 1975 to May, 1977).
Plaintiff testified: He graduated from the police academy in 1965 and rose to the rank of Sergeant. While on duty in March, 1974 he was involved in a serious accident in the police van. He was hospitalized with severe pains, loss of hearing, contusion on the left side of the head and dizziness. He returned to duty in August, 1974. On December 6, 1974 he was involved in a second accident when struck by a tanker-truck. His vehicle was demolished and he was out of work for one and one-half months, after which time he returned to light duty. Dizzy spells diminished and were insignificant and he returned to full duty in August, 1975.
Plaintiff further testified: As a result of this, his third accident, he again suffers vertigo which renders him unfit for police duty. He tried to return to work in March, 1976 and June, 1976 but because of severe attacks of vertigo is unable to drive, and thus is unable to work. He is receiving Social Security disability benefits and has applied for a police disability pension. The request was denied. He has not worked since June, 1976 and his only income is money borrowed from his brothers and mother.
Although he claimed no earned income, it was established that he received an out-of-court settlement for his December, 1974 and *65 March, 1975 accidents, that he is a part owner of family land on the lakefront leased to The Bounty Restaurant, for which his mother receives the revenues, and is a part owner of Werner Enterprises which borrowed $350,000 to erect an office building with an apartment on the lakefront. Thus, he has substantial assets. He claims he is unable to drive because of vertigo but he has renewed his driver’s license, not disclosing his disability to the examining officer so, he says, he can use his license for identification purposes and he has driven about five weeks before the trial.
The brother and the roommate testified in general that plaintiff complains of sporadic episodes of dizziness. Miss Loyacano, his former girl friend, dated him once or twice a week during 1974-1976 and doesn’t remember whether he was dizzy or not on any of the occasions when they went to a movie or dancing.
Dr. Failla testified he examined plaintiff on September 21, 1976. Plaintiff complained of hearing problems and dizziness. He diagnosed plaintiff’s medical problems as vertigo and high frequency loss of hearing in the left ear. The prognosis was improved from the previous injury having reached maximum improvement. He was of the opinion the vertigo was caused by the prior March, 1974 accident.
Dr. Failla obtained a history and reviewed reports of previous physicians who examined plaintiff. He concluded plaintiff had a hearing deficit in the left ear for high pitched tones. He referred plaintiff to Dr. Wallace Rubin for an electronystagmogra-phy study (to determine damage, if any, to the equilibrium center). X-rays showed some subluxation of the cervical vertebra 3, 4 and 5, with narrowing of the inner space.
Based upon plaintiff’s history and other findings, the doctor determined plaintiff sustained damage to his equilibrium and to the high pitched tones of his hearing. Studies of plaintiff in 1974 and 1975 showed marked improvement from the 1974 study so the doctor concluded plaintiff had improved from his 1974 injury, but had no way of telling if the 1976 findings showed an improvement over the 1975 studies.
The doctor never saw plaintiff have an attack of dizziness and stated the complaints originated after the 1974 accident. He concluded the loss of hearing originated with the 1974 accident but could not say so with certainty because he did not examine plaintiff before this injury. The subluxation was also revealed in the 1974 x-rays.
Dr. Norman Hunt testified relative to x-rays taken in March, 1974, December, 1974 and December, 1975. After the March, 1974 x-rays, anterior subluxation at C3 and C4, on C5 showed loss of normal cervical curve. X-rays after the December 6, 1974 accident revealed normal cervical vertebrae and after the December 30, 1975 accident, x-rays revealed anterior subluxation of C3, C4 and C4-C5. On August 23, 1975 the subluxation on one area was gone, but still present on C3 and C4.
Dr. Garcia Oiler saw plaintiff on December 23,1974 after the accident of December 3,1974. Plaintiff complained of pain in the neck, dizziness, loss of hearing and fear of driving. He was also seen in December, 1975 complaining of inner ear problems and severe loss of equilibrium. Dr. Oiler thought he should see a psychiatrist. He considered all three accidents contributed to plaintiff’s problems, that plaintiff never recovered from the first accident before he got into a second and third accident. Plaintiff was hospitalized in November, 1977 after a vertigo attack and in September, 1978, he had another fall due to vertigo.
In this court appellant contends: (1) The jury abused its discretion in failing to accept uncontested medical evidence; and (2) the verdict was based on inflammatory argument of defendant’s counsel. We do not agree with either contention.
A reading of the transcript in its entirety reveals the jury was well within its wide discretion in finding plaintiff had failed to sustain its burden of proof that his personal injuries resulted from the accident in suit and we conclude it was not clearly wrong *66 by so holding.[1] Apparently they believed those injuries resulted from the prior accidents, and the record contains evidence which supports that conclusion. We find no abuse of discretion.
Plaintiff also argues comments by defense counsel adversely affected the jury. He does not point to any particular statement or statements, and our examination of the record does not reveal any comments of defense counsel sufficiently prejudicial to warrant setting aside the jury’s verdict. Counsel for the defendant had the right to comment on the testimony of plaintiff and his witnesses, and our conclusion is further strengthened by the absence of objection to comments by counsel for plaintiff.[2]
For the reasons assigned, the judgment appealed from is affirmed.
AFFIRMED.

. See Canter v. Koehring Company, La., 283 So.2d 716; Arceneaux v. Dominque, La., 365 So.2d 1330.

. See Troxler v. Hertz Corporation, La.App., 385 So.2d 507; and Wilson v. Virgademo, La.App., 258 So.2d 572.